

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 16, 2022

**BY ECF**

Honorable Denise Cote
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    **United States v. James Velissaris,**
              **22 Cr. 105 (DLC)**

Dear Judge Cote:

      The Government respectfully submits this letter in opposition to the defendant's request for an adjournment of the upcoming trial in this matter (Dkt. No. 57 ("Def. Mot.")). Notwithstanding the defendant's complete distortion of the relevant facts, the basis for the defendant's motion boils down to the production of a laptop containing approximately 476 new documents of minimal significance that the Government did not possess until the very day it provided them to the defendant, at his request, a full three weeks before trial.

      Notably, the defendant waited 11 days after learning of this purported "discovery violation" and 8 days after receiving the laptop to alert the Court of this issue; yet even now, more than a week after obtaining the laptop, the defendant cannot point to a single file that contains any new information useful to the defense. As set forth below, the defendant's latest adjournment request is no more than a desperate attempt to avoid facing the overwhelming evidence against him, and should be denied.

Background

      Since this matter was indicted, the Government has provided full and robust discovery to the defense, including voluminous materials that were beyond the Government's Rule 16 and *Brady* obligations. The Government has also consistently provided timely and comprehensive information in response to the defendant's questions about the Government's discovery.

      At the time that this case was indicted, the U.S. Securities and Exchange Commission ("SEC") filed a parallel civil action against the defendant. (*See S.E.C. v. Velissaris*, 22 Civ. 1346 (PKC) (the "SEC Case")). Shortly after the SEC Case was filed, the defendant asked the Government to agree to a full stay of the SEC Case, including a blanket stay on discovery,

during the pendency of this criminal case.  The Government agreed and filed a motion accordingly.  (*See* SEC Case, Dkt. Nos. 7, 8, 9).  Nevertheless, the defendant has made numerous requests of the Government seeking materials gathered or generated by the SEC in the course of its parallel investigation.  As part of those efforts, the defendant filed a pre-trial motion seeking to compel the Government to review "all" information in the SEC's possession for discovery.  This Court denied that motion, finding that, although the Government obtained information from the SEC, the SEC Case was the result of the SEC's independent and parallel investigation, and the SEC was not part of the prosecution team in this criminal case.  (Dkt. No. 26).  Accordingly, the Government's Rule 16 and *Brady* obligations did not extend to the SEC.  (*Id.*).

Notwithstanding the Court's order, the Government has made extensive efforts to obtain materials from the SEC and produce them to the defense.  In fact, at the defendant's request, the Government voluntarily asked the SEC for all materials that the SEC gathered in the course of its investigation from third parties as well as a substantial amount of SEC work product analyzing the effects of the defendant's fraud, irrespective of whether that work product is protected by privilege.  The Government produced all these materials it received from the SEC's files to the defendant.   The Government has also reviewed all memoranda of interviews conduct by the SEC for *Brady* or *Giglio* disclosures, and has produced to the defendant SEC interview notes and memoranda for both testifying and non-testifying witnesses along with the Government's production of 3500 material.  Additionally, for any SEC employee who may be testifying at trial, the Government has collected and produced from the SEC relevant emails from those employees for the time period related to their testimony.  In total, the Government has produced well over half a million documents from the SEC, constituting over 4 million pages of records.

In addition to producing records, the Government has promptly responded to the defendant's questions about the discovery.  Thus, for example, on June 24, 2022, the Government provided defense counsel with detailed explanations concerning discovery and the identification of different documents that had been produced.  (*See* 6/24/2022 email from Daniel Loss, attached hereto as Exhibit A).  In that same email, despite having already produced everything that the Government had obtained from the SEC, the Government specifically asked that "[t]o the extent there are particular, relevant materials in the possession of the SEC that you believe you are entitled to, we ask that you let us know so that, if appropriate, we can make efforts to obtain them for you (as we have done so far)."  Similarly, on July 22, 2022, the Government again provided detailed information to the defense concerning the discovery.  (*See* Def. Mot., Ex. C).  Among other things, that email further explained the voluminous nature of the materials produced from the SEC, including "expansive work product."  In response to the defendant's question, that email also addressed two documents that the Government had recently obtained from the SEC and produced at the defendant's request.  These included (a) approximately twelve individual screenshots that the SEC had taken from Bloomberg's BVAL system (which were in addition to the several thousands of screenshots that had been produced earlier from the SEC's files), and (b) a letter in which the defendant asserted his intent to assert the Fifth Amendment rather than be deposed by the SEC (a document which the defendant, but not the Government, already possessed, and which has no relevance to these proceedings).  As set forth in the July 22, 2022 email, those records constituted just a handful of pages and notwithstanding their questionable relevance, the Government promptly obtained and produced them at the defendant's request.

As the Court is aware, the Government has also agreed to generous pre-trial disclosure deadlines in order to aid discovery in this case. For example, the Government agreed to produce 3500 materials over seven weeks before trial. (Dkt. No. 29). Before producing these materials, the Government asked, and the defendant confirmed in writing, that it did not plan to seek an adjournment of the trial date. (*See* 10/7/2022 email from Michael Krouse, attached hereto as Exhibit B).

On or about November 1, 2022, the Government learned from the SEC that during the SEC's parallel investigation, it had been provided with a copy of workpapers from Infinity Q's auditor, EisnerAmper, on a laptop in native format as an "accommodation" in order to make the workpapers easier to review. (*See* Def. Mot., Ex. F). By way of background, as part of its parallel investigation, the SEC had previously obtained over 6,000 Bates-stamped records from EisnerAmper, all of which were obtained by the Government and produced to the defense in March 2022. These documents included all of EisnerAmper's workpapers related to valuation, planning, or fraud risk assessment. As part of its investigation, the SEC requested the laptop in order to facilitate the native review of these records. The SEC understood that the workpapers on the laptop were intended to be duplicative of EisnerAmper's Bates stamped productions. Immediately after the Government learned of the laptop, which had never been in the Government's possession, the Government reached out to EisnerAmper to inquire about its contents. On November 3, 2022, EisnerAmper told the Government that the laptop appeared to contain approximately 476 files (the "New Laptop Files") that were not separately produced to the SEC as Bates stamped documents and that such files "<u>do not</u> relate to valuation or planning (including fraud risk assessment)." (*See* 11/3/2022 email from counsel to EisnerAmper, attached as Exhibit C) (emphasis in original)).[1]

Because the Government did not possess the New Laptop Files, they were not included in the Government's March 2022 production to the defense. Promptly after learning of their existence, the Government advised defense counsel, who requested a copy of the laptop. At the defendant's request, the Government secured a copy and provided it to defense counsel – along with a list prepared by EisnerAmper of the previously unproduced files – on the very next business day, November 7. Since obtaining the New Laptop Files, the Government has undertaken a preliminary comparison of the New Laptop Files to the Government's productions, and has determined that a substantial number of the New Laptop Files were in fact previously

---

[1] The defendant's motion characterizes the circumstances relating to the production of the New Laptop Files as "murky." This is not true. On November 1, 2022, the Government tried to locate the Bates number for a management letter (the "Management Letter") that had been compiled in preparation for a proffer with an EisnerAmper employee in September 2021. This proffer was attended by the SEC and the Government. Prior to the proffer, on September 9, 2021, the SEC provided the Management Letter to the Government in the form of a .pdf document with the filename "2019 Management Rep Letter Mutual Fund (from laptop).pdf." The undersigned do not recall taking any note of the filename upon receipt of the document, and in any event likely would not have appreciated at the time that it represented anything other than the document's original filename.

produced as Bates-stamped documents by EisnerAmper (for example in the form of email attachments) or by other parties, and thus were included in the Government's Rule 16 productions to the defense months ago.

Apart from the few hundred documents at issue, the remainder of the laptop appears to have been entirely included in the Government's prior productions. The defendant's adjournment motion highlights a New Laptop File identified as WP5203 "EIS-603v Using an Auditor Specialist - Valuation," which related to the 2020 Hedge Fund audit, but tellingly the defendant failed to attach the referenced document (attached as Exhibit D hereto). In fact, a very similar version of the same workpaper (but relating to the 2020 Mutual Fund audit) was produced to the defendant in March 2022 bearing Bates number EA-DA-2020-00003026 (attached hereto as Exhibit E).[2] Furthermore, the information reflected in the Hedge Fund-related file that the defendant claims was undisclosed (Ex. D) is in fact contained in two documents that were previously produced with Bates stamps EAB-0000097 (Ex. F) and EA-VA-2020-00000046 (Ex. G) and provided to the defendant months ago. (*Compare* Exhibit D at 2 ("Steven Ahn Bio") *with* Exhibit F at 1; *compare also* Exhibit D at 3 (description of work to be performed by specialist) *with* Exhibit G at 2).

From speaking with defense counsel after the production of the laptop, the Government has also learned that defense counsel – which include attorneys with extensive experience defending against SEC actions – were aware that such native laptops are sometimes provided to the SEC but had never asked the Government to inquire whether one existed here, notwithstanding that the Government on multiple occasions invited the defense to make specific requests for additional information from the SEC, beyond the more than half of million SEC files, including third party productions, internal work product, and interview notes and memoranda that the Government obtained and produced. For instance, as explained above and as Def. Mot., Exhibit C reflects, on July 22, 2022, the Government wrote to the defense:

> As the Court previously ruled, the SEC is not part of the prosecution team and has no Rule 16 and *Brady* obligations. Nevertheless, as we have previously explained, the Government has gone to substantial lengths in this case to obtain relevant information from the SEC, including by endeavoring to provide you with all documents that the SEC obtained from third parties and agreeing to provide you with notes or memos of interviews that the SEC conducted with testifying and non-testifying witnesses during its parallel investigation. Beyond that, we provided you with expansive work product from the SEC . . . . **We have also invited you to make specific requests for additional information**, as you did, for instance, in your June 23 email requesting "all screenshots" take by the SEC, in response to which we obtained

---

[2] The Government understands from EisnerAmper that the Hedge Fund version of WP5203 "EIS-603v Using an Auditor Specialist - Valuation" (Ex. D) is included in the count of approximately 476 New Laptop Files but was omitted from the list of such files because of an inadvertent vendor error relating to items with identical files names. The Government has requested an updated list from EisnerAmper of the New Laptop Files and will forward the list to defense counsel upon receipt.

4

and produced approximately 12 additional screenshots on top of the thousands of screenshots that we previously provided.

When the defendant has made targeted requests regarding the SEC's files, the Government has consistently complied where reasonable, such as with respect to the screenshots discussed above (Def. Mot., Ex. C), cover letters and transmittal emails that the SEC received from Bloomberg, and other materials. In short, according to defense counsel, they, but not the Government, suspected that such a laptop may have existed, but failed to ever inquire about it.

In any event, the defendant, who is represented by a large international law firm, has now been given the additional few hundred workpapers in both native and load file format three weeks prior to trial. Based on the Government's review of these materials, they consist largely of items such as organizational charts, public SEC filings, and executed copies of previously produced unexecuted (but otherwise identical) materials, such as engagement letters, capital contribution confirmations, and other near-duplicative documents. None of the new documents appears to relate to the fabricated term sheets that form the basis of Count Four or to the defendant's misrepresentations concerning Infinity Q's valuation practice for over-the-counter derivatives, and the defendant has not identified any such documents in his motion. Rather than demonstrate how the laptop is actually necessary to his defense, the defendant uses the laptop's production as an excuse to request that trial be delayed for an indeterminate amount of time, as well as to request that the Government conduct an aimless fishing expedition to review other unspecified materials that are purportedly in the SEC's possession and that the Court conduct a baseless "inquiry" into why the laptop was not produced earlier.

Applicable Law

"[A] district court has a great deal of latitude in scheduling trials." *United States v. Griffiths*, 750 F.3d 237, 241 (2d Cir. 2014); *see also United States v. Budovsky*, No. 13 Cr. 368 (DLC), 2016 WL 386133, at *10 (S.D.N.Y. Jan. 28, 2016); *United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 209 (S.D.N.Y. 2015). This is due to the inherent logistical difficulties in scheduling trials: "Not the least of [trial courts'] problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). Thus, "trial courts enjoy very broad discretion in granting or denying trial continuances." *United States v. Stringer*, 730 F.3d 120, 127 (2d Cir. 2013). A decision to grant or deny a request for an adjournment is reviewed for abuse of discretion, and the Court of Appeals "will find no such abuse unless the denial was an arbitrary action that substantially impaired the defense." *Id.* Thus, a defendant must show "both arbitrariness and prejudice in order to obtain reversal" based on a denial of a continuance. *Id.* at 128.

"Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of counsel" in a criminal case. *United States v. Scopo*, 861 F.2d 339, 344 (2d Cir.1988) ("Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise prepare for trial violates a defendant's Sixth Amendment right to counsel."). Finally, "[t]he burden of showing [substantial impairment of the defense] is on the party complaining of the lack of a sufficient continuance."

5

*United States v. O'Connor*, 650 F.3d 839, 854 (2d Cir. 2011). The "societal interest in providing a speedy trial . . . exists separate from, and at times in opposition to, the interests of the accused." *Barker v. Wingo*, 407 U.S. 514, 519 (1972). A speedy trial "serves the public interest by, among other things, avoiding extended pretrial delays, which may impair the deterrent effect of punishment." *United States v. Bert*, 814 F.3d 70, 83 (2d Cir. 2016). "Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied.'" *Id.*; *see United States v. Moreno*, 789 F.3d 72, 78 (2d Cir. 2015) (noting the "public's interest in a speedy adjudicative system").

Discussion

The defendant's adjournment request based on the production of a few hundred documents of, at most, marginal relevance a full three weeks before trial is a meritless attempt to delay trial.

As an initial matter, the defendant operates from the false premise that there is any Rule 16 or Brady obligations with respect to materials in the files of the SEC, which is an independent agency that conducted a parallel, as opposed to joint, investigation. As the Court previously explained in its July 3, 2022 Order, the "SEC is not part of the 'prosecution team,' and a "search of SEC files by the USAO is not required here." (Dkt. 26 at 5). The defendant's adjournment request wholly ignores this ruling through its assertion that the Government somehow committed a "discovery violation" with respect to documents that were not in its possession, and by suggesting that the Government should "independently" review all of the files in the SEC's possession in an aimless and far-reaching fishing expedition. (Def. Mot. 6). Moreover, as a practical matter, as defense counsel is no doubt aware, the Government does not have "independent" access to the SEC's files, but rather obtains materials from the SEC by making requests. Here, the Government has already requested all materials that the SEC gathered and provided such documents to the defense. And contrary to the defendant's baseless claim that there has been some "breakdown in communications" between the Government and the SEC, the Government has, with the utmost assistance and cooperation of the SEC, promptly provided the defendant with vast discovery from the SEC's files in this matter, in a manner that extends far beyond the Government's obligations. Moreover, the defendant's accusation that the SEC must have understood that the laptop contained workpapers beyond those that were previously produced by EisnerAmper is baseless. (Def. Mot. 5-6). EisnerAmper specifically produced the laptop to the SEC as an "accommodation" and without any Bates numbering indicating that it might contain new material. Thus, the SEC, and certainly the Government, would have had no basis to know about these few hundred workpapers earlier. (*See id.*, Ex. F).

The notion that there was any bad faith involved in the production of the laptop is belied by the history of discovery in this case. Indeed, notwithstanding that the Government had no legal obligation to search the SEC's files, the Government voluntarily provided the defendant not only with the documents that the SEC received from third parties, but also with SEC's interview notes and memoranda for both testifying and non-testifying witnesses, and extensive internal SEC work product and emails. Among other things, the Government produced hundreds of thousands of documents from the SEC's files promptly following the Indictment, including more than 6,000 documents produced to the SEC by EisnerAmper, which contained all auditor

6

workpapers for Infinity Q relating to valuation, audit planning, and fraud detection. Furthermore, the Government has gone above-and-beyond what is legally required by complying with numerous requests by the defendant for specific information in the SEC's files, such as certain email correspondence between the SEC and third parties, and providing the defendant with information from the SEC's files that was already in his own possession, such as his Fifth Amendment declaration. And, as soon as the Government became aware of the New Laptop Files, the Government independently alerted defense counsel to their existence.

The defense argument that an adjournment is appropriate due to the production, at the defendant's request, of a few hundred workpapers that were not previously in the Government's possession and do not relate to valuation, audit planning or fraud detection – a full three weeks before trial – is simply meritless. Putting aside that the Government had no obligation to obtain or produce the documents at issue, the defendant makes no real attempt to explain how three weeks is not enough time to digest the limited material at issue for the numerous partners and associates involved in this case at defense counsel's law firm. Moreover, many of the documents at issue were in fact previously collected from third parties other than EisnerAmper and produced to the defense months ago, including, for instance, Infinity Q's public SEC filings, annual shareholder reports, meeting minutes for the board of the Mutual Fund, and organizational charts. Multiple documents produced as stand-alone files on the laptop (and included in the count of New Laptop Files) were also previously obtained from EisnerAmper as email attachments and produced to the defendant with the Government's initial Rule 16 production in March 2022. The documents also consist of executed versions of standard documents such as engagement letters that were previously produced in unexecuted form. Significantly, based on a preliminary review, the Government is unaware of any new documents concerning the fabricated term sheets that the defendant provided to EisnerAmper or his false representations to EisnerAmper about Infinity Q's valuation process for over-the-counter derivatives. Nor has the defendant identified any such document. In fact, the only specific example of a potentially relevant document that the defense has come up with after 8 days reviewing the laptop's contents is a 6-page form concerning the auditor's use of a valuation specialist. (*See* Ex. D). This document sheds no light on whether the defendant lied to Infinity Q's auditors and, in any event, contains information duplicative of other documents produced to the defendant in March 2022. (*See* Exs. E, F, G).

Under these circumstances, there is simply no justification for an adjournment. As the Government expressed in its opposition to the defendant's previous adjournment request, which the Court denied, the investing public, including the many investors who have lost money in Infinity Q, have a substantial interest in seeing this fraud exposed and the defendant held accountable for these crimes. *See Bert*, 814 F.3d at 83 (noting public interest in a speedy trial). Accordingly, the Court should adhere to its prior rulings denying the defendant's request to adjourn.

The defendant relies on authority for the proposition that adjournment requests may be appropriate where "(i) the requested delay is of a short (or at least fixed) duration, (ii) the sought-after evidence is specified with particularity, (iii) the proposed evidence is critical to the defense, and (iv) the defendant has not been dilatory." (Def. Mot. 9) (citing *United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 210 (S.D.N.Y. 2015)). Yet the defendant's request fails each of these four

conditions: (i) the defendant's request is not of a fixed duration, and appears to contemplate a perceived entitlement to the pre-trial production of materials from the SEC for so long as that agency's ongoing investigation continues (Def. Mot. 9); (ii) the defendant already has the claimed "sought-after" evidence on the laptop and is unable to articulate anything else that he believes exists to which he is entitled; (iii) the few hundred New Laptop Files at issue do not appear related to the central issues in this case, such as the defendant's representations regarding valuation; and (iv) the defendant waited eleven days after learning of the laptop to raise this issue with the Court, without justification. Thus, even under the defendant's proposed rubric, his request for an adjournment fails.

After considering the nature of the case, the positions of counsel, and the public interest, the Court previously concluded that a "firm" trial date of November 28 was fair and appropriate, and reaffirmed the appropriateness of the November 28 trial date in denying the defendant's previous request for an adjournment. As recently as October 7, the defendant disclaimed any intention to renew its request for an adjournment. There is nothing about the Government's voluntary production, at the defendant's request, of a few hundred partially duplicative documents of marginal relevance a full three weeks before trial that justifies otherwise.

Accordingly, for the reasons set forth above, the defendant's request for an adjournment should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
Daniel Loss / Daniel Tracer / Margaret Graham
Assistant United States Attorneys
(212) 637-6527 / 2329 / 2923