UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
 UNITED STATES OF AMERICA,              :
                                        :
                 -v-                    :      22cr105 (DLC)
                                        :
 JAMES VELISSARIS,                      :      OPINION AND
                                        :         ORDER
                      Defendant.        :
                                        :
--------------------------------------- X

APPEARANCES:

For the United States of America:
Margaret Graham
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007

For the defendant:
Michael A. Battle
William R. Martin
Michelle N. Bradford
David S. Slovick
Erin C. Steele
Barnes & Thornburg LLP
555 12th Street NW
Suite 1200
Washington, DC 20004

DENISE COTE, District Judge:

     On November 21, 2022, James Velissaris pled guilty to one

count of securities fraud.  On April 7, 2023, the defendant's

motion to withdraw his plea of guilty was denied, he was

sentenced principally to a term of 180 months' imprisonment, and

remanded.  On April 19, the defendant filed a notice of appeal

of his sentence and conviction.  That same day, the defendant

also filed a motion seeking his release from imprisonment pending the appeal.  For the following reasons, the motion for release pending appeal is denied.

## Background

The Court assumes familiarity with the transcript from the defendant's sentencing and with the Opinion on the motion to withdraw the defendant's plea of guilty, <u>United States v. Velissaris</u>, 22cr105 (DLC), 2023 WL 2875487 (S.D.N.Y. Apr. 10, 2023), both of which are incorporated herein.  The facts relevant to the instant motion are briefly summarized below.

This case arises out of Velissaris's scheme to defraud investors while working as the Chief Investment Officer of Infinity Q Capital Management, LLC ("Infinity Q"), an investment adviser.  Infinity Q managed a registered mutual fund and a private fund (together, the "Funds").  The Funds held various securities including over-the-counter ("OTC") derivative positions, which are not traded on an exchange.

Velissaris represented to investors and others that, to maintain an independent valuation process, Infinity Q valued its OTC derivative positions using a third-party service known as the Bloomberg Valuation Service ("BVAL").  BVAL allows users to model various financial instruments using templates.  To value an OTC derivative position, BVAL users enter the relevant

parameters for the position into the appropriate template and then run a program that produces a valuation.

Infinity Q and Velissaris represented to investors and others that Infinity Q was not involved in the substantive valuation process for the Funds' OTC derivative positions.  In fact, however, for certain positions, Velissaris altered the inputs for the positions or the BVAL code itself in order to inflate artificially the value of the positions.  This increased the reported net asset value ("NAV") of the assets held by the Funds, which allowed Velissaris to reap larger management and performance fees.  In addition to altering BVAL's code and the inputs entered into BVAL despite his representations to investors, Velissaris also falsified documents to hide his conduct from Infinity Q's auditors and the Securities and Exchange Commission ("SEC").

On November 21, just before trial was scheduled to begin, Velissaris entered a plea of guilty to one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5.  After concluding that there was a sufficient factual predicate for the plea of guilty and that the defendant was entering the plea knowingly and voluntarily, the Court accepted the plea and set a sentencing date.

On March 24, 2023, the same day that his sentencing submission was due, the defendant, represented by new counsel, filed a motion to withdraw his guilty plea.  On April 7, after oral argument, the motion to withdraw the plea was denied.  A fifty-eight-page Opinion was issued on April 10 elaborating on the reasons for the denial.  Velissaris, 2023 WL 2875487.

The April 10 Opinion addressed each of the defendant's arguments for his motion to withdraw the plea, including those that he appeared to abandon in his reply memorandum.  It rejected his three arguments that the Government failed to meet its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Id. at *11-12.  It rejected the argument that his plea was involuntary due to his mental state.  Id. at *13-14.  It rejected each of his contentions that he had presented evidence that he was innocent of securities fraud.  Id. at *15-18.  And finally, it explained that the defendant unreasonably delayed in bringing the motion, and that granting the motion would have created significant unfair prejudice for the Government.  Id. at *19-20.

On April 19, the defendant filed a notice of appeal of his conviction and sentence.  Later that evening, he also filed the instant motion for release pending resolution of that appeal.

**Discussion**

Since the Court already denied the defendant's request at the sentencing proceeding for bail pending appeal, the defendant's instant motion may be properly viewed as a motion to reconsider.  "Because the Federal Rules of Criminal Procedure do not specify the standards governing a motion to reconsider," courts in this district look to "Local Civil Rule 6.3 ('Local Rule 6.3') for the appropriate standard for reconsideration of a decision in a criminal matter."  United States v. Krasniqi, No. 1:10-cr-464-GHW, 2022 WL 16925215, at *1 (S.D.N.Y. Nov. 13, 2022) (citation omitted) (collecting cases).  Local Rule 6.3 provides parties with an opportunity to inform the Court of "matters or controlling decisions" which counsel believes the Court has "overlooked."  "Local Rule 6.3 is narrowly construed and strictly applied so as to avoid repetitive arguments on issues that the court has already considered fully."  In re Gen. Elec. Co. Sec. Litig., 856 F. Supp. 2d 645, 652 (S.D.N.Y. 2012).

The defendant does not identify any matters or controlling decisions pertinent to the bail decision that the Court overlooked.  Indeed, the defendant's memorandum of law does not even address the statements made by the Court on the record at the sentencing proceeding, nor does it acknowledge the Court's

April 10 Opinion on the motion to withdraw the defendant's guilty plea, which touched on many of the relevant issues. Instead, the short memorandum simply lists the arguments he made in the motion to withdraw the plea and argues that he is not a flight risk.  Thus, the defendant has presented no reason to reconsider the Court's decision to deny bail pending appeal, which alone is sufficient to deny his motion.

Even setting aside that he has failed to address the proper standard for a motion for reconsideration, however, the defendant has not satisfied his burden to show that release is warranted.  18 U.S.C. § 3143(b) provides that a Court

> shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained unless the judicial officer finds --
>
> (A)  by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . . ; and
>
> (B)  that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in --
>
> (i)  reversal,
>
> (ii)  an order for a new trial,
>
> (iii) a sentence that does not include a term of imprisonment, or
>
> (iv)  a reduced sentence to a term of imprisonment less than the total time

6

already served plus the expected duration
of the appeal process.

(Emphases added.)  See also United States v. Randell, 761 F.2d
122, 125 (2d Cir. 1985).

A.   Risk of Flight

First, the defendant has not shown by clear and convincing
evidence that he is not likely to flee if released pending
appeal.  The defendant possesses substantial financial resources
and has the means to flee if he chooses.  Further, the
defendant's actions leading up to his sentencing suggest that
his primary motivation is to avoid serving his sentence.
Roughly two weeks before his sentencing was scheduled, the
defendant retained new counsel, who immediately requested a 60-
day extension of the sentencing.  Later, on the same day that he
filed his sentencing submissions, he also submitted an
unexpected motion to withdraw his plea of guilty.  On the eve of
his already delayed sentencing, he submitted letters raising
additional issues and sought a further adjournment of the
sentencing.  Thus, the defendant's conduct after changing his
counsel appeared to be directed solely towards delaying the
proceedings and surprising the Court with a drumbeat of new
applications.

Defense counsel argues that the last-minute motions and
requests for delay should not be a reason to consider Velissaris

a flight risk.  They note that the Government had previously
made two requests for continuances of the sentence, and that the
decisions to file the motions, as well as the timing of the
motions, were decisions made by defense counsel, rather than the
defendant himself.  It is true that the Government requested two
continuances of the sentencing date, one of ten days and one of
one week.  But the defendant mischaracterizes the extent of his
demonstrated desire to delay the proceedings.  As explained at
greater length in the April 10 Opinion, the defendant attempted
to delay the trial in this case on multiple occasions and, after
his plea of guilty, also attempted to delay the sentencing
multiple times.  Velissaris, 2023 WL 2875487, at *20.

Likewise, the argument that the substance and timing of the
motions made on the eve of Velissaris's sentencing were
strategic decisions made by lawyers is also not persuasive.  It
is fair to conclude that these strategic moves were made at the
request of and with the consent of the defendant.  In the
defense's own telling, the entire purpose for Velissaris
retaining new counsel was so that the defendant could take a
more active role in the defense strategy.  Thus, the suggestion
that the defendant's current counsel's actions are divorced from
any requests from the defendant is not persuasive.

Moreover, contrary to the tenor of the defendant's memorandum, the issue is not whether evidence exists suggesting that the defendant is a flight risk, but rather whether the defendant has presented "clear and convincing evidence" showing that he is not a flight risk.  He has failed to do so.  The defendant's memorandum relies in part on statements in the Pre-Sentence Report prepared by the probation department.  But this report was created before the defendant changed counsel, filed a motion to withdraw his plea, and began his campaign of eleventh-hour filings to avoid the sentencing.  Therefore, statements in that report are not persuasive evidence now.  The memorandum also notes that the defendant did not miss any court dates and that, on February 25, 2022, he had to post a bond secured by $2 million, which he would surrender if he fled.  But these facts provide no assurance that now, after the defendant's motion to withdraw his plea has been denied and a fifteen-year sentence imposed, the defendant will not continue escalating his strategic decisions and flee to avoid serving his sentence.  He is a wealthy man with a net worth estimated at many times the value of the posted bond.  Thus, the defendant has not shown by clear and convincing evidence that he is not likely to flee if released.

B.    Substantial Question of Law or Fact

Second, wholly apart from defense counsel's failure to carry its burden with respect to the risk of flight, it has utterly failed to carry its burden of showing that the appeal presents a substantial question of law or fact.  The motion for release pending appeal lists several potential questions of law or fact relevant to his conviction (or, more precisely, to the denial of the motion to withdraw his plea), as well as one potential question related to his sentencing.  But the motion makes no developed argument on any of these issues to show that even one of them raises a substantial question of law or fact on appeal.

1.    Issues Relating to Conviction

First, regarding his conviction, the defendant refers to an argument made in connection with the motion to withdraw that he cannot be guilty of securities fraud for failing to disclose that Infinity Q adjusted the valuations produced by BVAL because certain disclosures stated to investors that Infinity Q reserved the right to make such adjustments.  This argument was squarely addressed and rejected in the April 10 Opinion.

That Opinion noted, for example, that "the Government's case did not depend on the jury disregarding the documents that defense counsel cites in this motion."  Velissaris, 2023 WL

10

2875487, at *16.  It outlined the substantial additional
evidence, including the defendant's own sworn testimony,
suggesting that any alterations the defendant made were made not
to make valuations more accurate, but to increase fraudulently
the NAV of the Funds.  Id. at *15-16.

The April 10 Opinion also explained that

> the disclosures on which the defendant now relies
> represented that Infinity Q's valuation committee
> would meet to approve any changes in valuations
> produced by pricing services.  Velissaris offers no
> evidence, however, that the valuation committee
> approved the alterations he made to BVAL or the inputs
> to BVAL.  And, during the SEC's investigation of
> Velissaris, he provided the SEC with falsified minutes
> of meetings of the valuation committee to hide his
> fraudulent use of BVAL.

Id. at *16 n.15.

To elaborate further on this point, one of the disclosures
that Velissaris relied on provided that

> Infinity Q has established a Valuation Committee that
> is responsible for determining fair values and to
> ensure timely analysis and implementation of policies
> related to the pricing of individual securities or
> groups of securities that may be held by the Funds.
>
> The Valuation Committee is comprised of members of
> senior management including Infinity Q's Chief
> Investment Officer, Chief Executive Officer, Chief
> Risk Officer, and Chief Compliance Officer. . . .
>
> The Valuation Committee meets monthly or more often if
> needed to establish pricing. . . .  Any action or
> determination by the Valuation Committees shall
> require the approval of a majority of all members
> present at such meeting in quorum. . . .

11

The Valuation Committee is responsible for carrying
out certain functions relating to the valuation of
portfolio securities and other assets.   These
responsibilities include: . . . [w]here broker
quotes/price indications or pricing service values
(each, a "quote") are relied upon to value a
particular type of asset, reviewing quantitative and
qualitative information, such as the appropriateness
of the source (e.g., pricing source, broker or other
source), recent trade activity and outliers and, where
appropriate, quantitative support for valuations used.

(Emphases added.)   The same disclosure also explained that

[i]n circumstances where an exchange, a pricing
service, or where one or more quotes are not available
for a Position, or where such exchange, pricing
service, quote or quotes may not provide a reliable
indication of fair value, Infinity Q will value each
such Position based on relevant information . . . .  A
written valuation memo/model shall be provided for
model-based prices explaining why the price used
reflects fair value of the Position.

(Emphases added.)

Velissaris provided no evidence in connection with his

motion to withdraw or now that his alterations to BVAL were

approved by the Valuation Committee or that he prepared a

written valuation memo that explained why the altered price

reflected fair value.   Thus, as already explained in the April

10 Opinion, he has presented no evidence why certain disclosures

about Infinity Q's general ability to arrive at fairness in the

valuation process make Velissaris innocent of securities fraud.

The defendant also refers to his argument that he cannot be

guilty of securities fraud for mismarking the positions at issue

since these same disclosures purportedly allowed the defendant
to make adjustments to bring the valuations closer to fair
value.  But, again as already explained in the April 10 Opinion,
the defendant testified at his plea allocution that his
alterations were not intended to bring valuations closer to fair
value and instead were intended to inflate the Funds' NAV and to
defraud investors.  Id. at *17.  Further, the defendant has
never presented any evidence suggesting that the specific
alterations he made brought the valuations closer to fair value.
Id. at *18.

Finally, the defendant briefly lists other arguments made
in his motion to withdraw his guilty plea including his Brady
argument and his argument that the plea was involuntary.  These
arguments, too, were addressed at length in the April 10
Opinion, and the defendant offers no response to the analysis
presented in that Opinion.  Id. at *11-14.

2.   Issues Relating to Sentencing

Regarding his sentencing, the defendant separately contends
that he has raised a substantial question about the accuracy of
the financial loss amount contained in his plea agreement with
the Government and used in the Pre-Sentence Report to determine
his sentencing guidelines range.  Velissaris questioned the
calculation of the loss amount for the first time the night

before his sentencing.  As the Court already explained at the
defendant's sentencing,

> [t]here was no objection in the [Pre-Sentence Report]
> to the calculation of the offense level based on the
> amount of loss, there was no mention in the
> defendant's sentencing submission with respect to a
> dispute regarding this issue, and there was a plea
> agreement in which the defendant stipulated to this
> offense level adjustment. . . .
>
> I have, as of today, no alternative number from the
> defendant, nor do I have a showing . . . that would
> prove that BVAL valuations are not objectively
> correct.  In any event, that's sort of irrelevant.  It
> was BVAL that the defendant chose as the independent
> source for valuing securities so that investors, which
> were largely, not exclusively, large financial
> institutions, could trust that there be no
> manipulation.  I must say this is really too late to
> raise this loss calculation issue.  But there is
> plenty of support for the calculation contained in the
> presentence report.

The Court then elaborated on the various sources of
information that suggested that the parties' agreed-upon loss
calculation range of $65 million to $150 million was reasonable,
as required under the law, if not conservative.  The defendant
points to no evidence suggesting that a different loss amount
was more accurate, or that the evidence considered by the Court
in evaluating the parties' agreed-upon calculation was not
appropriate to consider.  Nor does he now offer an alternative
figure as more accurate.  Accordingly, he has not shown that the
appeal will present a substantial question regarding the loss
calculation, much less that any revised loss calculation will

reduce his sentence to a term of imprisonment less than the expected duration of the appeal process.

In this motion for release, Velissaris has failed to engage with any of the reasoning provided by the Court at the April 7 proceeding or in the April 10 Opinion.  Velissaris merely lists the meritless arguments he previously made in connection with his motion to withdraw the plea and his attempts to adjourn the sentencing.  This is insufficient to show that his appeal raises a substantial question of law or fact.  Thus, contrary to defense counsel's representations, it appears that the appeal is taken solely for the purpose of delay.  Section 3143 requires that this latest attempt to delay execution of his sentence be denied.

## Conclusion

The defendant's motion for release pending appeal is denied.

Dated:      New York, New York
            April 20, 2023

                                    _____
                                         DENISE COTE
                                    United States District Judge