

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 13, 2023

Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    <u>United States v. James Velissaris</u>,
              <u>22 Cr. 105 (DLC)</u>

Dear Judge Cote:

      The Government writes in support of a restitution order in the amount of $126,281,371.02, to be paid to two victims in this case: the Diversified Alpha Fund ("DAF") and the Volatility Alpha Fund ("VAF") (together, the "Funds"). The defendant objects to the entirety of both requests, arguing that:

      (1) the crime of which the defendant was convicted is not included in the applicable restitution statutes;

      (2) even if the statutes were applicable, the number of victims and complex issues of fact in this case would make restitution impracticable under the Mandatory Victims Restitution Act (18 U.S.C. § 3663A(b)(1));

      (3) any fees associated with the Funds' participation in and/or compliance with the SEC's civil order/investigation, or the Fund's own investigation, are not recoverable;

      (4) the calculation of the amount of overpayments is unreliable;

      (5) the victims will be made whole by settlements in related civil matters; and

      (6) Mr. Velissaris cannot be held responsible for the legal fees of third parties.

      For the reasons set forth below, these arguments are without merit, and restitution of $126,281,371.02 should be ordered.

**<u>Procedural History</u>**

      As the Court is aware, on November 21, 2022, the defendant pleaded guilty to committing securities fraud between 2018 and 2021, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2. The plea agreement that the defendant signed included an agreement "to make restitution in an amount ordered by the Court, pursuant to Title 18, United States Code, Sections 3663, 3663A, and 3664." (Plea Agmt. 2.) During the plea

proceeding, the Court detailed the possible consequences of the defendant's plea and asked "And there may also be requirements of forfeiture and restitution.  Do you understand that?"  The defendant responded, "yes, your Honor."  (Plea. T. 9.)

On April 7, before determining the defendant's sentence, the Court noted that "[a]t one point, there was some discussion, I think, of restitution in the amount of $259 million," and stated that it would defer restitution pursuant to 18 U.S.C. § 3664(d)(5) "to give the parties time to hopefully reach agreement with respect to the amount of restitution."  (Sent. T. 43-44.)  The Court then heard the parties' arguments on the appropriate sentence for the defendant.  Defense counsel argued, in part, that:

> In the financial fraud context in particular, as your Honor knows, a severe or a substantial period of incarceration is not needed to promote general deterrence. Here, there is a $22 million forfeiture order and there will likely be millions of dollars in restitution that Mr. Velissaris will have to comply with. This forfeiture amount alone serves as a general deterrent to anyone considering this type of activity that it's not worth it, as any alleged ill-gotten gains will be taken away.

(Sent T. 50.)  After considering this as well as other defense arguments, the Court sentenced the defendant primarily to 180 months' imprisonment.

## Victims' Restitution Amounts

The amounts of restitution due to each victim are set forth below.  These are the same amounts that were detailed in the parties' June 2 letter.

### Diversified Alpha Fund

The DAF alleges losses of $59,152,245.00.  The supporting documentation is attached as Exhibit A through G.  The details are summarized below.

| | |
|---|---|
| $46,482,819.00 | overpayments to former shareholders who fully redeemed their shares in the DAF at inflated net asset values |
| $7,485,202.00 | excess management fees paid by DAF to Infinity Q Capital Management ("IQCM") |
| $850,000.00 | payments to Russell Investments for liquidation of DAF's assets |
| $1,573,882.00 | payments to Alvarez and Marsal Valuation Services for reevaluation of DAF's historical NAVs |
| $2,288,416.00 | payments to Cornerstone Research for distribution of DAF's assets to shareholders |
| $450,000.00 | fees to Bloomberg for the BVAL license used during the reevaluation |

$21,926.00          attorneys' fees for restitution application[1]

Volatility Alpha Fund

The VAF alleges losses of $67,129,126.02.  The supporting documentation is attached as Exhibit H.[2]  The details are summarized below.

| | |
|---|---|
| $26,573,945.89 | overpayments to IQCM for management fees and performance allocations |
| $18,880,319.12 | overpayments to Limited Partners who withdrew funds based on inflated NAVs |
| $20,235,496.29 | legal fees for Velissaris's criminal defense up until plea and sentencing |
| $516,115.00 | legal fees for Scott Lindell |
| $79,182.67 | legal fees for other IQCM employees who were interviewed by the Government |
| $844,067.05 | payments to Markit to revalue VAF's historical investment portfolio |

**Applicable Law**

Under the Victim and Witness Protection Act ("VWPA"), *see* 18 U.S.C. § 3663, a district court may order restitution to victims who suffer a pecuniary harm as a result of certain offenses, including offenses against property committed by fraud or deceit.  The VWPA also provides that "[t]he court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3).  The Second Circuit has held that an agreement by the defendant to pay restitution "determined to be due an owing . . . as directed by the Court" is sufficient to authorize the Court to calculate and impose restitution as part of the judgment of conviction.  *United States v. Shaw*, 446 Fed. App'x 357, 358 (2d Cir. 2011).

Under the VWPA, a "victim" means "a person directly and proximately harmed as a result of the commission of an offense," including, in the case of an offense that involves as an element a "scheme" or "pattern of criminal activity," "any person directly harmed by the defendant's criminal conduct in the course of the scheme . . . ."  18 U.S.C. § 3663(a)(2).  In the context of the Mandatory Victims Restitution Act, which contains similar language, the Second Circuit has found direct cause to be established where a defendant's action was the "but for" cause of the harm.  *United States v. Marino*, 654 F.3d 310, 322-23 (2d Cir. 2011).  As to proximate cause, a court must consider "whether the harm alleged has a sufficiently close connection to the conduct at issue," and the requirement may be satisfied where the harm was

---

[1] DAF's April 6, 2023 letter stated that the attorneys' fees were $18,874.  However, as communicated by DAF's counsel and reflected in the attached invoice, the correct amount is $21,926.

[2] As with the June 2 letter, the Government respectfully requests that Exhibit H be filed under seal, as it contains sensitive financial information of VAF and its investors.

"foreseeable." *Robers v. United States*, 572 U.S. 639, 645 (2014) (internal quotation marks omitted); *accord United States v. Williams*, 811 F. App'x 690, 691 (2d Cir. 2020).

In the case of an offense resulting in loss of property, a victim is entitled to the return of the property or, if the return of the property is impossible, impractical, or inadequate, "an amount equal to the greater of (i) the value of the property on the date of the damage, loss, or destruction, or (ii) the value of the property on the date of sentencing, less the value . . . of any part of the property that is returned." 18 U.S.C. § 3663(b)(1). In addition, a defendant may be ordered to "reimburse the victim for lost income and necessary . . . other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4); *see also United States v. Afriyie*, 27 F.4th 161, 173-74 (2d Cir. 2022) (holding, in the context of the MVRA, that "other expenses" include "attorneys' fees [a victim] was required to incur to advance the investigation or prosecution of the offense" and "[t]he expenses a victim incurs while preparing for and participating in restitution proceedings").

## Discussion

The defendant objects to the Funds' claims, arguing that his crime of conviction does not permit restitution, that the fees claimed by the Funds are invalid in various ways, and that the ways that the Funds calculated their claims are unreliable. These arguments are without merit, and should be rejected.

### The Defendant Agreed to Pay Restitution In His Plea Agreement

The defendant argues that the Court cannot order restitution because the crime of which he was convicted is not included in the applicable restitution statutes. The Court need not decide whether Title 15 securities fraud falls under the applicable restitution statutes, because the defendant expressly agreed in his plea agreement "to make restitution in an amount ordered by the Court, pursuant to Title 18, United States Code, Sections 3663, 3663A, and 3664." This includes 18 U.S.C. § 3663(a)(3), which states that the Court may "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." As discussed, this language is sufficient under the VWPA to authorize the Court to impose restitution. *See Shaw*, 446 Fed. App'x at 358. The Court assured itself that the defendant understood this part of his agreement during the thorough and lengthy plea colloquy. (Plea. T. 9.) The sentencing transcript shows that the defendant understood full well that he was agreeing to pay restitution, and indeed argued that his restitution obligations should result in *less* prison time. (Sent. T. 50.)

In short, the defendant knowingly and intelligently agreed to be bound by the restitution statutes, and he cannot now argue otherwise.

### Restitution is Practicable and the Calculations are Reliable

The defendant argues that "the number of victims and complex issues of fact in this case" make restitution "impracticable," referencing 18 U.S.C. § 3663A(b)(1). The defendant does not elaborate further.

As a preliminary matter, the defendant appears to be referencing Section 3663A(c)(3) rather than Section 3663A(b)(1). Section 3663A(c)(3) provides that the MVRA shall not apply if the number of identifiable victims is so large as to make restitution impracticable," or "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3).

Here, there are only two victims who have claimed restitution: the DAF and the VAF. Two victims is far from impracticable. And the Government does not believe that determining restitution imposes such a burden on the sentencing process that it outweighs the need to provide restitution to any victim. Indeed, the victims were able to set forth their claims in just a few dozen pages. The Government therefore submits that determining restitution is entirely appropriate here. *See, e.g.*, *United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003) (holding that where district court did not consider restitution process too burdensome, it did not commit plain error in proceeding with restitution in "admittedly complex case").

*None of the Fees Arose from the SEC's Investigation*

The defendant claims that "any fees associated with the Funds' participation in and/or compliance with the SEC's civil order/investigation, or the Fund's own investigation, are not recoverable," without specifying to which fees he refers. But no such fees were included in either VAF's or DAF's requests. Given this, the defendant's argument is meritless.

On June 8, 2023, the Government asked VAF to confirm that the expenses noted in its May 30 letter arose solely from the criminal investigation and prosecution, citing *United States v. Afriyie*, 27 F.4th 161 (2d Cir. 2022). VAF responded:

> I can confirm that the attorneys' fees included in the hedge fund's restitution request are only those that relate to the criminal prosecution. We were mindful of that limitation and reviewed the invoices to remove from the request any fees that were exclusively for the SEC investigation. (Some fees that were necessary for both were included in the request.) No fees were included for the fund's own investigation.

As for the DAF's request, it specifically noted in its March 30 letter that was not seeking restitution for attorneys' fees incurred while responding to SEC requests, due to *Afriyie*. (Ex. A at 5 n.18). Therefore, the Funds' requests for attorneys' fees are recoverable.

It is unclear whether the defendant is also challenging fees paid to service providers that were retained in the spring of 2021 to help liquidate the Funds' assets, reevaluate its historic net asset values ("NAVs"), and distribute assets to shareholders. As set forth in DAF's March 30 letter, on February 19, 2021, after discovering the defendant's fraud, IQCM informed DAF that it was unable to calculate a current NAV ("net asset value") for the fund. DAF then applied with the SEC to suspend shareholder redemptions, and the SEC approved the application in an order that required DAF to create a plan for an orderly liquidation of DAF assets; develop a distribution plan to make appropriate payments to shareholders; and engage an independent third

party to assist in determining the fair value of the Fund's OTC positions, including re-evaluating the historical valuations of the Fund. (Ex. A, at 2.)

The fees that DAF paid to service providers were:

- RIIS: assisted in the liquidation of DAF's assets, once the SEC ordered DAF to liquidate the Fund assets in February 2021;
- Alvarez & Marsal: reevaluated the DAF's historic net asset values ("NAVs") to determine when and to what extent DAF's NAV was overstated;
- Cornerstone Research: assisted in distributing DAF''s assets to shareholders.
- Bloomberg: fees for a BVAL license, used during the reevaluation of DAF's NAVs;

To the extent the defendant is challenging DAF's fees because he argues they were "associated with" DAF's "compliance with the SEC's civil order/investigation," he misunderstands the law. *Afriyie* and *Lagos* held that victims could not recover for expenses associated solely with SEC investigations or internal investigations. But the fees at issue here were not associated with any investigation. Rather, these fees were associated with the wind-down process for DAF – a wind-down that was necessitated by the defendant's fraud. The SEC's Investment Management Division had input into this process, as can be seen from the publicly-filed documents referenced in DAF's letter. (Ex. A, at n.2, n.5.) But SEC IM's involvement in the wind-down does not make it a part of SEC Enforcement's civil investigation, and it is only fees associated with the latter that are barred by *Afriyie*, which was interpreting the MVRA provision that covered "expenses incurred during participation in the investigation or prosecution of the offense." The wind-down fees claimed by DAF are another category entirely, which *Afriyie* does not discuss: they are losses that were directly and proximately caused by the defendant's fraud. (Ex. A, at 6-7.)

VAF also seeks reimbursement for the fees it paid to Markit to reevaluate VAF's historic NAVs. VAF argues that it is entitled to these fees because the U.S. Attorney's Office used Markit's revised NAV in its indictment, and the VAF used Markit's calculations to calculate the restitution amounts set forth in its letter.

*The Victims' Calculations Are Reliable*

The defendant argues that the calculation of the amount of overpayments is "unreliable," without explaining why. The process by which DAF arrived at its calculations is explained above: reevaluation of the NAVs by Alvarez & Marsal, then calculation of overpayments by Cornerstone. VAF had IHS Markit, an independent third party, reevaluate its NAVs, and then had NERA calculate its overpayments. (Ex. H, at 1-2). These calculations were performed by reputable companies, and the defendant has not explained why he thinks their calculations were unreliable. In any event, in arriving at a restitution figure, the Court need only make a "reasonable estimate" of the victims' losses due to the fraud. *United States v. Milstein*, 481 F.3d 132, 137 (2d Cir. 2007).

*The Defendant Has Not Shown that the Restitution Amount Should Be Reduced By Recoveries in Civil Litigation*

The defendant argues that restitution should not be ordered because "the victims will be made whole by settlements in related civil matters." The defendant does not cite any factual support for this assertion, which seems to be pure speculation about what may occur in the future.

This is not how restitution works. If at some point in the future the victims receive compensatory damages for the same loss in civil proceedings, then their restitution recovery may be reduced accordingly. *See* 18 U.S.C. § 3664(j)(2); *see also United States v. Smathers*, 879 F.3d 453, 459 (2d Cir. 2018) (discussing cases where defendants made post-judgment motions under 3664(j) to reduce their remaining restitution obligations). But that reduction is not made *ex ante* on the defendant's unsupported speculation.

*The Victims Are Entitled to Restitution for the Legal Fees of Third Parties*

The defendant argues that restitution should not include legal fees "of third parties," presumably referring to VAF's claim for the legal fees of Scott Lindell and other IQCM employees who were interviewed by the Government. But the Second Circuit has held that the legal fees of third parties are recoverable in restitution, if those fees were incurred during the criminal investigation or prosecution . *Afriyie*, 72 F.4th at 164, 173 (holding that fees associated with the preparation of trial witnesses for a criminal trial were recoverable). And, as noted above, VAF affirmed that it reviewed invoices and removed any fees that were exclusively for the SEC investigation. The claimed fees are therefore recoverable under clear Second Circuit law.[3]

---

[3] While the defendant does not appear to be challenging the claim for attorney's fees incurred in preparing the restitution application, any such claim would similarly be without merit. The Second Circuit has held that legal fees incurred during the post-verdict restitution proceedings are recoverable. *Afriyie*, 72 F.4th at 173-74.

**<u>Conclusion</u>**

The defendant's arguments are meritless, and a restitution order for the amounts requested by the Funds is appropriate.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
Margaret Graham
Assistant United States Attorney
(212) 637-2923

8

# EXHIBIT A



ATTORNEYS AT LAW

Daniel S. Noble
(203) 325-5090
dnoble@fdh.com

March 30, 2023

Margaret S. Graham, Esq.
Assistant U.S. Attorney
U.S. Attorney's Office
Southern District of New York
1 Saint Andrew's Plaza
New York, NY 10007

Re:    *United States v. James Velissaris*, 22 Cr. 105 (DLC)

Dear AUSA Graham:

We represent the Special Litigation Committee ("SLC") of the Board of the Trust for Advised Portfolios ("TAP"), of which the Infinity Q Diversified Alpha Fund (the "Fund") is a series portfolio.  On December 20, 2021, the Board of TAP approved the creation of the SLC to investigate and pursue on behalf of the Fund any potential claims against other parties arising from the massive valuation fraud perpetrated by defendant James Velissaris.[1]  Any funds that are recovered through claims pursued by the SLC on behalf of the Fund will ultimately be distributed to the Fund's shareholders.

The Fund was a victim of the securities fraud offense to which Mr. Velissaris pled guilty in the above-captioned case.  As a direct and proximate result of Mr. Velissaris' fraudulent mismarking scheme, the Fund incurred extensive pecuniary damages described below.  The SLC, on behalf of the Fund, requests that the Government seek restitution to compensate the Fund for its losses when Mr. Velissaris is sentenced on April 7, 2023.

### Background

The Fund was formed in September 2014 as a series of TAP, a multiple series Delaware statutory trust structured as an open-end management investment company registered under the Investment Company Act of 1940.  The Fund's portfolio consisted primarily of cash and a variety of equity and over-the counter ("OTC") derivative positions.  From the Fund's inception, Infinity Q Capital Management, LLC ("IQCM"), a registered investment adviser based in New York, New York, advised and was principally responsible for the day-to-day management of the Fund.  Mr. Velissaris was the founder and Chief Investment Officer ("CIO") of IQCM and exercised control over IQCM until he was removed on or about February 21, 2021.  Under the Investment Advisory

---

[1] *See* TAP, *Special Litigation Committee Announcement* (Dec. 28, 2021), *available at:*
https://www.infinityqfundliquidation.com/cases/infinity%20q/2023.03.01%20slc%20announcement.pdf.

March 30, 2023
Page 2

Agreement between the Fund and IQCM dated September 23, 2014, the Fund was required to pay IQCM an annual management fee of 1.70% of the Fund's average daily net assets.

As alleged in the Indictment, and as Mr. Velissaris admitted at his guilty plea, between at least 2018 and February 2021, Mr. Velissaris engaged in a fraudulent scheme to mismark the value of the Fund's OTC derivative positions. *See* Indictment (ECF 1), at ¶¶ 1, 25-33; Plea Tr. (Nov. 21, 2022), at 13-15. Mr. Velissaris perpetrated the mismarking scheme in order to materially inflate the net asset value ("NAV") of the Fund as reported to investors, to attract and retain investments in the Fund, and to increase the management fees paid by the Fund to IQCM and, in turn, Mr. Velissaris' own compensation. *See* Indictment ¶ 1.

On February 18, 2021, based on information that the U.S. Securities and Exchange Commission ("SEC") shared with IQCM, IQCM informed the Fund that Mr. Velissaris had been manipulating certain parameters in the third-party pricing model used to value the Fund's assets, which had affected the value of the Fund's OTC derivatives.[2] The next day, IQCM informed the Fund that it was unable to verify the reasonableness of the previously reported value of the Fund's OTC positions and, therefore, was unable to calculate a current NAV for the Fund.[3]

On February 22, 2021, IQCM and TAP, on behalf of the Fund, filed an application, pursuant to Section 22(e) of the Investment Company Act, with the SEC to suspend shareholder redemptions in the Fund as of February 19, 2021.[4] The SEC approved the application the same day (the "SEC Order").[5] The SEC Order required the TAP Board to create a plan for an orderly liquidation of Fund assets and develop a distribution plan to make appropriate payments to shareholders.[6] Both plans were to be submitted to SEC staff and be implemented under the supervision of the SEC.[7] The SEC Order also required TAP, on the Fund's behalf, to engage an independent third party to assist in determining the fair value of the Fund's OTC positions, including re-evaluating the historical valuations of the Fund.[8]

Consistent with the SEC Order, the TAP Board retained Russell Investments Implementation Services, LLC ("RIIS"), a registered investment adviser, to assist in the liquidation

---

[2] *See* Application of Infinity Q Diversified Alpha Fund and Infinity Q Capital Management, LLC for an Order pursuant to Section 22(e)(3) of the Investment Company Act of 1940 (Feb. 22, 2021), *available at:* https://www.infinityqfundliquidation.com/cases/q%20proposal/sec%20application.pdf ("Section 22(e) Application"), at 3.

[3] *See id.*

[4] *See generally* Section 22(e) Application.

[5] *See* Notice of Application and a Temporary Order Under Section 22(e)(3) of the Investment Company Act of 1940 (Feb. 22, 2021), *available at:* https://www.infinityqfundliquidation.com/cases/q%20proposal/sec%20order.pdf.

[6] *See id.* at 5.

[7] *See id.* at 6.

[8] *See id.*

March 30, 2023
Page 3

of the assets held by the Fund that were not already in cash or cash equivalents at the time of the SEC Order.[9]  On or about March 19, 2021, the liquidation of the Fund's assets was completed, which resulted in the Fund holding cash or cash equivalent assets of approximately $1,249,395,877.[10]  In connection with the liquidation, the Fund paid RIIS approximately **$850,000** in fees.[11]

Pursuant to the SEC Order, the TAP Board retained Alvarez & Marsal Valuation Services, LLC ("A&M") to perform a re-evaluation of the Fund's February 18, 2021 NAV and the Fund's historical valuations.[12]  A&M's analysis was required by the SEC Order and necessary for the Fund to determine when and to what extent the Fund's NAV was overstated.  Based on its analysis, A&M determined that the Fund's OTC derivatives positions were overstated at each month-end date from February 2017 through January 31, 2021.  In connection with the re-evaluation of the Fund's NAVs, the Fund paid A&M approximately **$1,573,882** in fees.

As stated above, the SEC Order required the TAP Board to develop a plan of distribution to distribute the Fund's assets to shareholders under the supervision of the SEC (the "Distribution Plan").  In connection with the TAP Board's efforts to determine how much of the Fund's assets needed to be held in reserve to cover the Fund's own debts, obligations, and liabilities (the "Special Reserve"), the Fund's counsel retained Cornerstone Research ("Cornerstone") to develop reasonable estimates of the total amounts that the Fund may be liable to pay in damages to shareholders in pending securities class actions on account of transactions in the Fund's shares during the period in which the Fund's NAV was inflated.[13]

In November 2021, the TAP Board finalized the Distribution Plan, and the Fund made an interim distribution of approximately $500 million, or about 40% of the Fund's gross assets, on a

---

[9] *See* Infinity Q Diversified Alpha Fund Plan of Distribution of Assets (Nov. 8, 2021), *available at:* https://www.infinityqfundliquidation.com/cases/q%20proposal/infinity%20q%20-%20amended%20plan%20of%20distribution%20final%2011-4-2021.pdf ("Distribution Plan"), at 2.

[10] *Id.* at 3.  As of February 18, 2021, the last date on which the Fund calculated its NAV, the Fund's stated NAV based on valuations performed by Mr. Velissaris was $1,727,194,949.  As discussed herein, an independent third-party valuation consultant retained by the TAP Board calculated that the Fund's NAV as of February 18, 2021 should have been approximately $1,334,262,392.  Thus, while the Fund suffered a loss as a result of the liquidation of the Fund's assets—the difference between the as-liquidated value of the Fund's assets ($1,249,395,877) was approximately $84,866,515 *less* than the Fund's NAV on February 18, 2021 ($1,334,262,392) as calculated by the valuation consultant—the amount of such loss attributable to the liquidation cannot reasonably be quantified.  Although the Fund submits that Mr. Velissaris is responsible for such loss, because of the difficulty in quantifying the loss, the Fund is not seeking restitution on that basis.

[11] Although the Investment Advisory Agreement between IQCM and the Fund provides that IQCM is responsible for paying any costs of liquidating the Fund, IQCM rejected the Fund's demand that IQCM agree to pay the liquidation expenses.  *See* Distribution Plan at 4.

[12] *See id.* at 3.

[13] *See id.*

March 30, 2023
Page 4

pro rata basis to each shareholder as of February 18, 2021.[14]  The Fund used Cornerstone to calculate the amounts to be distributed to each shareholder (less an initial offset claim based on a shareholder's gain as a result of any redemptions of the Fund's shares at an inflated NAV).  The Fund also paid "Redemption Claims" in accordance with the Distribution Plan and used Cornerstone to calculate the amounts to be distributed to those shareholders that had previously redeemed their shares but had not been paid.  In April 2022, the TAP Board approved a second interim distribution of approximately $170 million to the Fund's current shareholders, and the Fund again used Cornerstone to calculate the amounts to be distributed to shareholders.  After making the second interim distributions, the Fund held approximately $570 million in the Special Reserve to satisfy the Fund's liabilities.[15]  To date, the Fund has paid Cornerstone approximately **$2,288,416** in fees in connection with the distribution of the Fund's assets.[16]

Separately, at the SLC's request, Cornerstone calculated the following based on A&M's re-evaluated historical NAVs for the Fund: (i) the net amount that the Fund overpaid former shareholders who fully redeemed their shares of the Fund at an inflated NAV (taking into account the amount the Fund received from those shareholders when they bought shares from the Fund at an inflated price); and (ii) the amount of management fees that the Fund overpaid to IQCM as a result of the inflated NAVs.  Based on Cornerstone's calculations, between February 2017 and February 2021, the Fund incurred a net inflation loss of approximately **$46,482,819** and paid approximately **$7,485,202** in excess management fees to IQCM.[17]

---

[14] *See* Shareholder Notice, *Infinity Q Diversified Alpha Fund Commences Interim Distribution of $500 Million* (Nov. 8, 2021), *available at:*
https://www.infinityqfundliquidation.com/cases/q%20proposal/infinity%20q%20-%20fund_%20shareholder%20notice%20-%20initial%20distribution%20%28final%2011-8-2021%29.pdf.

[15] *See* Shareholder Notice, *Infinity Q Diversified Alpha Fund Commences Second Distribution of $170 Million* (Apr. 15, 2022), *available at:*
https://www.infinityqfundliquidation.com/cases/q%20proposal/iq%20fund_%20shareholder%20notice%20-%20second%20interim%20distribution%20%28april%202022%29.pdf.

[16] On November 10, 2022, the SEC filed a settled civil action against the Fund that alleged that, as a result of Mr. Velissaris' mismarking of certain of the Fund's positions, the Fund violated Rule 22c-1 under the Investment Company Act of 1940, which governs the pricing of Fund shares.  The settlement enjoined the Fund from further violations of Rule 22c-1, but imposed no financial penalties.  As part of the settlement, the Fund consented to the appointment of a Special Master to, among other things, oversee the distribution of the Fund's remaining assets going forward.  *See* Final Judgment on Consent, *SEC v. Infinity Q. Diversified Alpha Fund*, No. 22 Civ. 9608 (PKC) (S.D.N.Y. Nov. 17, 2022) (ECF 8).  As contemplated by the settlement, on January 10, 2023, Judge Castel entered a consent order appointing a Special Master.  *See* Consented to Order Appointing Special Master, *SEC v. Infinity Q. Diversified Alpha Fund*, No. 22 Civ. 9608 (PKC) (S.D.N.Y. Jan. 10, 2023) (ECF 15).

[17] Neither Mr. Velissaris nor IQCM has repaid the Fund for the excess management fees.

March 30, 2023
Page 5

On February 17, 2022, the Indictment in the above-captioned case was unsealed.[18]  Based on the fraudulent scheme to mismark the Fund's OTC derivative positions, the Indictment charged Mr. Velissaris with one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 240.10b-5; one count of investment adviser fraud, in violation of 15 U.S.C. §§ 80b-6 and 80b-17; and one count of wire fraud, in violation of 18 U.S.C. § 1343.[19]

On November 21, 2022, Mr. Velissaris pled guilty, pursuant to a plea agreement with the government, to Count One of the Indictment, which charged him with securities fraud.  In the plea agreement dated November 20, 2022, Mr. Velissaris "agree[d] to make restitution in an amount ordered by the Court, pursuant to Title 18, United States Code, Sections 3663, 3663A, and 3664."[20] At the change of plea hearing, Mr. Velissaris acknowledged that in addition to a term of imprisonment and other potential penalties that could result from his guilty plea, "there may also be requirements of forfeiture and restitution."[21]  Mr. Velissaris consented to entry of a Preliminary Order of Forfeiture in the amount of $22 million representing the proceeds traceable to the securities fraud offense that Mr. Velissaris personally obtained.[22]

## **Applicable Law**

Under the Victim and Witness Protection Act ("VWPA"), *see* 18 U.S.C. § 3663, a district court may—and under the Mandatory Victims Restitution Act ("MVRA"), *see* 18 U.S.C. § 3663A, a district court *must*—order restitution to victims who suffer a pecuniary harm as a result of certain offenses, including offenses against property committed by fraud or deceit.[23]  The VWPA also

---

[18] In connection with its participation in the government's investigation of Mr. Velissaris, the Fund incurred attorneys' fees paid to its outside counsel.  Because most, if not all, of the attorneys' fees incurred were in response to requests from the SEC, however, the Fund is not seeking restitution for those attorneys' fees in light of the Second Circuit's holding that only fees incurred in connection with the criminal investigation and prosecution of the defendant are eligible for restitution.  *See United States v. Afriyie*, 27 F.4th 161, 173-74 (2d Cir. 2022).

[19] The Indictment also charged Mr. Velissaris with making false statements to an accountant, in violation of 15 U.S.C. §§ 78ff, 80a-29, 7202 and 17 C.F.R. § 240.13b2-2; conspiracy to obstruct an SEC investigation, in violation of 18 U.S.C. § 371; and obstruction of an SEC investigation, in violation of 18 U.S.C. § 1519.

[20] Plea Agreement at 2.

[21] Plea Transcript, *United States v. Velissaris*, No. 22 Cr. 105 (DLC) (S.D.N.Y. Nov. 21, 2022), at 9.

[22] *Id.* at 16; *see also* Consent Preliminary Order of Forfeiture/Money Judgment, *United States v. Velissaris*, No. 22 Cr. 105 (DLC) (S.D.N.Y. Nov. 21, 2022) (ECF 66).

[23] It is an open question in the Second Circuit whether a district court can or must award restitution to victims where a defendant has been convicted solely of an offense under Title 15.  *See United States v. Afriyie*, 27 F.4th 161, 166 n.1 (2d Cir. 2022) (noting that "[t]here is some disagreement in the district courts about whether securities fraud is a covered offense" under the VWPA and MVRA, but stating that the court "need not resolve this debate …because the parties never raised it and because [the defendant] was also convicted of wire fraud").  Here, Mr. Velissaris, who was also charged with wire fraud, agreed in his plea agreement to pay restitution to victims in an amount to be determined by the district court, and

March 30, 2023
Page 6

provides that "[t]he court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3).

For purposes of restitution, a "victim" means "a person directly and proximately harmed as a result of the commission of an offense," including, in the case of an offense that involves as an element a "scheme" or "pattern of criminal activity," "any person directly harmed by the defendant's criminal conduct in the course of the scheme . . . ." 18 U.S.C. § 3663(a)(2); *see also* 18 U.S.C. § 3663A(a)(2). The Second Circuit has found direct cause to be established where a defendant's action was the "but for" cause of the harm. *United States v. Marino*, 654 F.3d 310, 322–23 (2d Cir. 2011). As to proximate cause, a court must consider "whether the harm alleged has a sufficiently close connection to the conduct at issue," and the requirement may be satisfied where the harm was "foreseeable." *Robers v. United States*, 572 U.S. 639, 645 (2014) (internal quotation marks omitted); *accord United States v. Williams*, 811 F. App'x 690, 691 (2d Cir. 2020).

In the case of an offense resulting in loss of property, a victim is entitled to the return of the property or, if the return of the property is impossible, impractical, or inadequate, "an amount equal to the greater of (i) the value of the property on the date of the damage, loss, or destruction, or (ii) the value of the property on the date of sentencing, less the value . . . of any part of the property that is returned." 18 U.S.C. § 3663(b)(1); *see also* 18 U.S.C. § 3663A(b)(1). In addition, a defendant may be ordered to "reimburse the victim for lost income and necessary . . . other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4); *see also* 18 U.S.C. § 3663A(b)(4); *United States v. Afriyie*, 27 F.4th 161, 173-74 (2d Cir. 2022) (holding that "other expenses" include "attorneys' fees [a victim] was required to incur to advance the investigation or prosecution of the offense" and "[t]he expenses a victim incurs while preparing for and participating in restitution proceedings").

## **Discussion**

The Fund was a victim of the years-long, massive valuation fraud that is the basis of Mr. Velissaris' securities fraud conviction and is, therefore, entitled to restitution under the MVRA, VWPA, and plea agreement.

Mr. Velissaris' fraud was the direct and proximate cause of the extensive pecuniary damages that the Fund has incurred, including: (i) a net inflation loss of **$46,482,819** as a result of having overpaid former shareholders who fully redeemed their shares in the Fund at inflated NAVs; (ii) the payment of **$7,485,202** in excess management fees to IQCM; and (iii) the Fund's payment of **$4,712,298** in fees to various service providers that the Fund had to retain in order to carry out, in accordance with the SEC Order, the liquidation of the Fund's assets (RIIS), re-evaluation of the Fund's historical NAVs (A&M), and distribution of the Fund's assets to

---

subsequently affirmed his understanding of his obligation to pay restitution to victims during his change of plea hearing.

March 30, 2023
Page 7

shareholders (Cornerstone). Thus, the total amount of pecuniary damages incurred by the Fund is **$58,680,319**.

The Fund is entitled to restitution for these pecuniary damages because they would not have occurred "but for" Mr. Velissaris' fraudulent misvaluation of the Fund's OTC derivative positions. *Marino*, 654 F.3d at 322–23. Furthermore, Mr. Velissaris' fraud was the proximate cause of the Fund's pecuniary damages because they were the reasonably foreseeable result of Mr. Velissaris' scheme. *Robers*, 572 U.S. at 645; *Williams*, 811 F. App'x at 691. Mr. Velissaris knew, or reasonably should have known, that his massive mismarking scheme would cause the Fund to overpay both IQCM and redeeming shareholders, and that when the scheme was uncovered, such a massive fraud would necessarily cause the collapse and liquidation of the Fund. All of the ensuing costs that the liquidation, re-evaluation of the Fund's NAVs, and distribution of the Fund's assets entailed were the natural and foreseeable result of Mr. Velissaris' fraud.

In addition to the pecuniary damages incurred by the Fund as a direct result of Mr. Velissaris' fraud, the Fund has also incurred attorneys' fees in connection with this restitution application for which it also seeks restitution. The Fund will provide the amount of attorneys' fees incurred once that application has been decided.

## <u>Conclusion</u>

For the foregoing reasons, the Fund respectfully requests that the Government seek restitution on behalf of the Fund for pecuniary damages in the amount of **$58,680,319**, and attorneys' fees for the Fund's restitution application in an amount to be determined. In addition, the Fund requests that the Government provide a copy of this letter to the Court as a Victim Impact Statement. Should the government or the Court require documentation to support the amount of restitution sought herein, or any other information, the SLC, on behalf of the Fund, will provide it.

Sincerely,

Daniel S. Noble

Cc:    David Slovick, Esq. (by email)
       Erin Steele, Esq. (by email)
       Michael Battle, Esq. (by email)
       William Martin, Esq. (by email)

       *Attorneys for Defendant James Velissaris*

# EXHIBIT B



ATTORNEYS AT LAW

Daniel S. Noble
(203) 325-5090
dnoble@fdh.com

April 6, 2023

Margaret S. Graham, Esq.
Assistant U.S. Attorney
U.S. Attorney's Office
Southern District of New York
1 Saint Andrew's Plaza
New York, NY 10007

Re:     *United States v. James Velissaris*, **22 Cr. 105 (DLC)**

Dear AUSA Graham:

As you know, we represent the Special Litigation Committee ("SLC") of the Board of the Trust for Advised Portfolios ("TAP"), of which the Infinity Q Diversified Alpha Fund (the "Fund") is a series portfolio. We write to supplement our letter dated March 30, 2023 regarding the Fund's request for restitution in the above-captioned case.

Following the submission of our March 30 letter to the government, the SLC was advised by the Fund's administrator, U.S. Bancorp Fund Services, LLC ("USBFS"), that in addition to the $1,573,882 in fees that the Fund paid to Alvarez & Marsal Valuation Services, LLC ("A&M") in connection with its re-evaluation of the Fund's historical net asset values ("NAVs"), the Fund also incurred **$450,000** in expenses that were necessary for A&M's analysis. Specifically, USBFS had to acquire a license from Bloomberg for A&M to use the Bloomberg Valuation Services ("BVAL") pricing tool in order to perform its historical valuation analysis. The Fund, in turn, was required to reimburse USBFS for the fees paid to Bloomberg.

As discussed in our March 30 letter, the SLC, on behalf of the Fund, is also seeking restitution for attorneys' fees that the Fund has incurred in connection with its restitution application. *See United States v. Afriyie*, 27 F.4th 161, 173-74 (2d Cir. 2022) (holding that "other expenses" under the MVRA include "[t]he expenses a victim incurs while preparing for and participating in restitution proceedings"). To date, those attorneys' fees total **$18,874**. The SLC reserves the right to seek additional attorneys' fees should the Fund incur such fees in connection with its preparation and participation in further restitution proceedings in this case.

April 6, 2023
Page 2


   Again, should the government or the Court require documentation to support the amount of restitution sought by the Fund, or any other information, the SLC will provide it.


        Sincerely,

        Daniel S. Noble


Cc: David Slovick, Esq. (by email)
   Erin Steele, Esq. (by email)
   Michael Battle, Esq. (by email)
   William Martin, Esq. (by email)

   *Attorneys for Defendant James Velissaris*

# EXHIBIT C

# DAF Vendor Expenses

GFS Vendor Expense - CR, AM, RIIS

| Fund Name | TF/Share CLass | Vendor Invoice | Payee | GL Number | Star GL Name | Period Start Date | Period End Date | Frequency | Fixed/Variable | Non Corp Entity f | TotalAmount | Description | Date Entered | Payment Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Infinity Q Diversified Alpha Fund | TF | 20210430-52310-A | Russell Investments US Institutional Holdco Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 4/1/2021 | 4/30/2021 | Monthly | Variable | Yes | 100,000.00 | 4.30.21 Inv. Advisory Fee Client ID C14121001 | 6/24/2021 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 20210331-52310-A | Russell Investments US Institutional Holdco Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 3/1/2021 | 3/31/2021 | Monthly | Variable | Yes | 750,000.00 | 3.31.21 Inv. Advisory Fee Client ID C14121001 | 4/27/2021 | Domestic Wire |
| | | | | | | | | | | | 850,000.00 | | | |
| | | | | | | | | | | | | | | |
| Infinity Q Diversified Alpha Fund | TF | 829620 202209303010 | Alvarez and Marsal Valuation Services LLC | 2005000200 | Accrued Other Expense (Fixed) | 3/28/2022 | 8/10/2022 | Various | Variable | Yes | 13,125.00 | Valuation services fees 3.28.22 thru 8.10.22 | 10/25/2022 | ACH |
| Infinity Q Diversified Alpha Fund | TF | 829620 220324145 | Alvarez and Marsal Valuation Services LLC | 2005000200 | Accrued Other Expense (Fixed) | 12/1/2021 | 3/23/2022 | Monthly | Variable | Yes | 137,891.25 | Valuation services fees 12.1.21 thru 3.23.22 | 3/27/2022 | ACH |
| Infinity Q Diversified Alpha Fund | TF | 829620 20211216151 | Alvarez and Marsal Valuation Services LLC | 2005000400 | Accrued Advisor Fees (Fixed) | 11/1/2021 | 11/30/2021 | Monthly | Variable | Yes | 45,307.50 | Valuation services fees 11.1.21 thru 11.30.21 | 12/22/2021 | ACH |
| Infinity Q Diversified Alpha Fund | TF | 829620 20211216134 | Alvarez and Marsal Valuation Services LLC | 2005000400 | Accrued Advisor Fees (Fixed) | 10/1/2021 | 10/31/2021 | Monthly | Variable | Yes | 117,993.75 | Valuation services fees 10.1.21 thru 10.31.21 | 12/22/2021 | ACH |
| Infinity Q Diversified Alpha Fund | TF | 829620 20211001366 | Alvarez and Marsal Valuation Services LLC | 2005000400 | Accrued Advisor Fees (Fixed) | 9/1/2021 | 9/30/2021 | Various | Variable | Yes | 328,135.59 | Valuation services fees 9.1.21 thru 9.30.21 | 10/5/2021 | ACH |
| Infinity Q Diversified Alpha Fund | TF | 829620 20210909175 | Alvarez and Marsal Valuation Services LLC | 2005000400 | Accrued Advisor Fees (Fixed) | 7/1/2021 | 8/31/2021 | Various | Variable | Yes | 263,865.00 | Valuation services fees 7.1.21 thru 8.31.21 | 9/21/2021 | ACH |
| Infinity Q Diversified Alpha Fund | TF | 829620 210720711 | Alvarez and Marsal Valuation Services LLC | 2005000400 | Accrued Advisor Fees (Fixed) | 5/8/2021 | 6/30/2021 | Various | Variable | Yes | 370,912.50 | Valuation services fees 5.8.21 thru 6.30.21 | 7/26/2021 | ACH |
| Infinity Q Diversified Alpha Fund | TF | 829620-20210511 | Alvarez and Marsal Valuation Services LLC | 2005000400 | Accrued Advisor Fees (Fixed) | 5/27/2021 | 5/7/2021 | Various | Variable | Yes | 296,651.25 | Valuation services fees through 5.7.21 | 5/26/2021 | ACH |
| | | | | | | | | | | | 1,573,881.84 | | | |
| | | | | | | | | | | | | | | |
| Infinity Q Diversified Alpha Fund | TF | 101371 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 10/1/2022 | 10/31/2022 | Monthly | Variable | No | 43,994.50 | October 2022 fees Infinity Q inv 101371 | 11/28/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 100677 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 9/1/2022 | 9/30/2022 | Monthly | Variable | No | 26,477.50 | September 2022 fees Infinity Q inv 100677 | 10/25/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 100341 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 8/1/2022 | 8/31/2022 | Monthly | Variable | No | 96,808.50 | August 2022 fees Infinity Q inv 100341 | 9/27/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 100340 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 8/1/2022 | 8/31/2022 | Monthly | Variable | No | 4,402.00 | August 2022 fees Infinity Q inv100340 | 9/27/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 99577 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 7/1/2022 | 7/31/2022 | Monthly | Variable | No | 78,673.00 | July 2022 fees Infinity Q inv 99577 | 8/28/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 99152 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 6/1/2022 | 6/30/2022 | Monthly | Variable | No | 104,907.00 | June 2022 fees Infinity Q inv 99152 | 7/26/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 98513 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 5/1/2022 | 5/31/2022 | Monthly | Variable | No | 127,830.00 | May 2022 fees Infinity Q inv 98513 | 6/22/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 98019 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 4/1/2022 | 4/30/2022 | Monthly | Variable | No | 95,060.50 | April 2022 fees Infinity Q inv 98019 | 5/11/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 97452 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 3/1/2022 | 3/31/2022 | Monthly | Variable | No | 149,560.00 | March 2022 fees Infinity Q inv 97452 | 4/6/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 97157 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 2/1/2022 | 2/28/2022 | Monthly | Variable | No | 53,666.00 | February 2022 fees Infinity Q inv 97157 | 3/27/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 97156 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 2/1/2022 | 2/28/2022 | Monthly | Variable | No | 12,435.50 | February 2022 fees Infinity Q inv 97156 | 3/27/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 96623 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 1/1/2022 | 1/31/2022 | Monthly | Variable | No | 5,144.00 | January 2022 fees Infinity Q inv 96623 | 2/24/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 96622 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 1/1/2022 | 1/31/2022 | Monthly | Variable | No | 51,058.50 | January 2022 fees Infinity Q inv 96622 | 2/24/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 96077 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 12/1/2021 | 12/31/2021 | Monthly | Variable | No | 50,672.00 | December 2021 fees Infinity Q inv 96077 | 1/27/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 96076 | Cornerstone Research Inc | 2005000200 | Accrued Other Expense (Fixed) | 12/1/2021 | 12/31/2021 | Monthly | Variable | No | 159,630.00 | December 2021 fees Infinity Q inv 96076 | 1/27/2022 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 95563 | Cornerstone Research Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 11/1/2021 | 11/30/2021 | Monthly | Variable | No | 230,775.00 | November 2021 fees Infinity Q inv 95563 | 12/22/2021 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 95090 | Cornerstone Research Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 10/1/2021 | 10/31/2021 | Monthly | Variable | No | 180,544.00 | October 2021 fees Infinity Q inv 95090 | 11/18/2021 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 95089 | Cornerstone Research Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 10/1/2021 | 10/31/2021 | Monthly | Variable | No | 6,727.50 | October 2021 fees Infinity Q inv 95089 | 11/18/2021 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 94556 | Cornerstone Research Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 9/1/2021 | 9/30/2021 | Monthly | Variable | No | 20,471.50 | September 2021 fees Infinity Q inv 94556 | 11/18/2021 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 94547 | Cornerstone Research Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 9/1/2021 | 9/30/2021 | Monthly | Variable | No | 117,499.00 | September 2021 fees Infinity Q inv 94547 | 11/18/2021 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 93875 | Cornerstone Research Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 8/1/2021 | 8/31/2021 | Monthly | Variable | No | 188,686.50 | August 2021 fees Infinity Q inv 93875 | 9/21/2021 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 93401 | Cornerstone Research Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 7/1/2021 | 7/31/2021 | Various | Variable | No | 156,474.00 | July 2021 fees Infinity Q inv 93401 | 8/18/2021 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 92866 | Cornerstone Research Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 6/1/2021 | 6/30/2021 | Monthly | Variable | No | 114,699.50 | June 2021 fees Infinity Q inv 92866 | 7/26/2021 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 91936 | Cornerstone Research Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 4/1/2021 | 4/30/2021 | Monthly | Variable | No | 47,325.00 | April 2021 fees Infinity Q inv 91936 | 6/10/2021 | Domestic Wire |
| Infinity Q Diversified Alpha Fund | TF | 92458 | Cornerstone Research Inc | 2005000400 | Accrued Advisor Fees (Fixed) | 5/1/2021 | 5/31/2021 | Monthly | Variable | No | 164,894.50 | May 2021 fees Infinity Q inv 92458 | 6/10/2021 | Domestic Wire |
| | | | | | | | | | | | 2,288,415.50 | | | |
| | | | | | | | | | | | | | | |

# EXHIBIT D

# DAF Excess Management Fees

## Infinity Q Diversified Alpha Fund
## Estimated Monthly Management Fees

| Month End | A&M BVAL based NAV | Calendar Days in Month | Monthly Fee Percentage[1] | Management Fees using A&M BVAL based NAV | Management Fees Paid by the Fund | Difference |
|---|---|---|---|---|---|---|
| | [a] | [b] | [c] = 1.7% * [b] / Days in Year | [d] = [a] * [c] | [e] | [f] = [e] - [d] |
| 1/31/17 | $157,705,722 | 31 | 0.14% | $227,701 | $223,484 | -$4,217 |
| 2/28/17 | $153,992,005 | 28 | 0.13% | $200,822 | $204,032 | $3,209 |
| 3/31/17 | $150,494,337 | 31 | 0.14% | $217,289 | $223,138 | $5,849 |
| 4/30/17 | $150,840,325 | 30 | 0.14% | $210,763 | $216,325 | $5,562 |
| 5/31/17 | $151,952,834 | 31 | 0.14% | $219,395 | $228,123 | $8,728 |
| 6/30/17 | $150,863,386 | 30 | 0.14% | $210,795 | $224,884 | $14,088 |
| 7/31/17 | $154,162,102 | 31 | 0.14% | $222,585 | $230,026 | $7,442 |
| 8/31/17 | $157,281,083 | 31 | 0.14% | $227,088 | $235,533 | $8,445 |
| 9/30/17 | $159,481,674 | 30 | 0.14% | $222,837 | $228,691 | $5,853 |
| 10/31/17 | $160,618,536 | 31 | 0.14% | $231,907 | $240,748 | $8,842 |
| 11/30/17 | $163,339,241 | 30 | 0.14% | $228,227 | $235,482 | $7,255 |
| 12/31/17 | $170,922,508 | 31 | 0.14% | $246,784 | $247,160 | $376 |
| 1/31/18 | $167,978,317 | 31 | 0.14% | $242,533 | $249,832 | $7,299 |
| 2/28/18 | $190,653,736 | 28 | 0.13% | $248,633 | $233,614 | -$15,020 |
| 3/31/18 | $207,624,579 | 31 | 0.14% | $299,776 | $295,265 | -$4,510 |
| 4/30/18 | $212,210,359 | 30 | 0.14% | $296,513 | $299,245 | $2,732 |
| 5/31/18 | $219,914,365 | 31 | 0.14% | $317,520 | $313,037 | -$4,483 |
| 6/30/18 | $226,903,459 | 30 | 0.14% | $317,043 | $316,056 | -$987 |
| 7/31/18 | $277,073,663 | 31 | 0.14% | $400,049 | $356,828 | -$43,221 |
| 8/31/18 | $301,904,307 | 31 | 0.14% | $435,900 | $426,772 | -$9,129 |
| 9/30/18 | $305,244,214 | 30 | 0.14% | $426,506 | $426,568 | $62 |
| 10/31/18 | $330,802,405 | 31 | 0.14% | $477,624 | $470,211 | -$7,413 |
| 11/30/18 | $327,385,803 | 30 | 0.14% | $457,443 | $482,469 | $25,026 |
| 12/31/18 | $407,733,741 | 31 | 0.14% | $588,700 | $552,887 | -$35,813 |
| 1/31/19 | $483,971,324 | 31 | 0.14% | $698,775 | $674,102 | -$24,673 |
| 2/28/19 | $503,541,368 | 28 | 0.13% | $656,673 | $676,409 | $19,736 |
| 3/31/19 | $522,587,676 | 31 | 0.14% | $754,531 | $780,059 | $25,528 |
| 4/30/19 | $529,844,230 | 30 | 0.14% | $740,330 | $772,017 | $31,687 |
| 5/31/19 | $554,263,655 | 31 | 0.14% | $800,266 | $810,991 | $10,725 |
| 6/30/19 | $577,016,402 | 30 | 0.14% | $806,242 | $844,643 | $38,401 |
| 7/31/19 | $610,109,196 | 31 | 0.14% | $880,897 | $927,726 | $46,829 |
| 8/31/19 | $628,851,896 | 31 | 0.14% | $907,959 | $986,565 | $78,606 |
| 9/30/19 | $637,903,976 | 30 | 0.14% | $891,318 | $969,817 | $78,499 |
| 10/31/19 | $643,257,037 | 31 | 0.14% | $928,757 | $1,022,733 | $93,975 |
| 11/30/19 | $672,005,978 | 30 | 0.14% | $938,967 | $1,028,609 | $89,641 |
| 12/31/19 | $675,803,617 | 31 | 0.14% | $975,749 | $1,099,960 | $124,210 |
| 1/31/20 | $699,973,429 | 31 | 0.14% | $1,007,885 | $1,123,490 | $115,605 |
| 2/29/20 | $666,659,534 | 29 | 0.13% | $897,987 | $1,102,676 | $204,689 |

| Infinity Q Diversified Alpha Fund<br>Estimated Monthly Management Fees | | | | | |
|---|---|---|---|---|---|
| **Month End** | **A&M BVAL<br>based NAV** | **Calendar Days<br>in Month** | **Monthly Fee<br>Percentage[1]** | **Management Fees<br>using A&M BVAL based NAV** | **Management Fees<br>Paid by the Fund** | **Difference** |
| | **[a]** | **[b]** | **[c] = 1.7% * [b] / Days in Year** | **[d] = [a] * [c]** | **[e]** | **[f] = [e] - [d]** |
| 3/31/20 | $604,102,066 | 31 | 0.14% | $869,841 | $1,362,783 | $492,942 |
| 4/30/20 | $679,339,492 | 30 | 0.14% | $946,621 | $1,552,061 | $605,440 |
| 5/31/20 | $764,558,435 | 31 | 0.14% | $1,100,881 | $1,753,662 | $652,782 |
| 6/30/20 | $871,450,690 | 30 | 0.14% | $1,214,317 | $1,826,896 | $612,580 |
| 7/31/20 | $949,631,603 | 31 | 0.14% | $1,367,366 | $2,021,059 | $653,693 |
| 8/31/20 | $1,063,316,258 | 31 | 0.14% | $1,531,059 | $2,149,127 | $618,068 |
| 9/30/20 | $1,142,723,614 | 30 | 0.14% | $1,592,320 | $2,220,673 | $628,354 |
| 10/31/20 | $1,181,634,728 | 31 | 0.14% | $1,701,425 | $2,394,362 | $692,937 |
| 11/30/20 | $1,267,669,718 | 30 | 0.14% | $1,766,425 | $2,370,196 | $603,771 |
| 12/31/20 | $1,396,584,503 | 31 | 0.14% | $2,010,929 | $2,464,385 | $453,456 |
| 1/31/21 | $1,351,829,415 | 31 | 0.14% | $1,951,819 | $2,503,565 | $551,745 |
| 2/18/21 | $1,334,262,392 | 18 | 0.08% | $1,118,587 | $1,777,543 | $658,956 |
| | | | | | | |
| **Total** | | | | **$36,232,362** | **$44,376,520** | **$8,144,158** |
| **Total – Excluding Feb 21** | | | | **$35,113,775** | **$42,598,977** | **$7,485,202** |
| | | | | | | |
| Source:  Alvarez&Marsal Infinity Q Portfolio Valuation dated August 11, 2022; Infinity Q Mgmt Fees 2017_2021.xlsx from U.S. Bank dated August 12, 2022 | | | | | | |
| Note: | | | | | | |
| [1]  Uses simple interest when calculating monthly fee percentage. | | | | | | |
| | | | | | | |
| | | | | | | |
| Privileged and Confidential:  Attorney Work Product | | | | | | |

# EXHIBIT E

# DAF Net Inflation Loss Calculation



## Infinity Q Diversified Alpha Fund
## Summary of Gains for Former Shareholders[1]

|  | Inflation Gains[2] | | |
| --- | --- | --- | --- |
|  | Net Gains[3] | Gross Gains[4] | |
| **Number of Accounts** | | | |
| With Gains > $0 | 10,759 | 12,824 | |
| With Gains > $50 | 8,909 | 9,179 | |
| With Gains > $100 | 8,096 | 8,348 | |
| With Gains > $1,000 | 3,866 | 4,120 | |
| With Gains > $5,000 | 1,162 | 1,274 | |
| With Gains > $10,000 | 575 | 612 | |
| With Gains > $50,000 | 86 | 90 | |
| With Gains > $100,000 | 44 | 46 | |
| With Gains > $400,000 | 9 | 9 | |
| With Gains > $500,000 | 9 | 9 | |
| With Gains > $1,000,000 | 4 | 4 | |
| | | | |
| **All Accounts with Positive Gains** | | | |
| Total Gains | $ 46,482,819.02 | $ 48,514,231.51 | $ |
| Maximum Gain | $ 6,537,349.25 | $ 6,545,971.56 | $ |
| Average Gain | $ 4,320.37 | $ 3,783.08 | $ |
| Median Gain | $ 512.02 | $ 341.00 | $ |

Source:  Infinity Q Fund Trading Data; Apex Trading Data; Baird Trading Data; BNC National Bank Trading Data; BNY Trading Data; Cetera Trading Data; CIBC Trading Data; Charles Schwab Trading Data; Commerce Trust Company Trading Data; Davidson Trading Da a; E-Trade Trading Data; Fidelity Trading Data; Fifth Third Bank Trading Data; First Midwest Trading Data; First Republic Trading Data; Glenmede Trading Data; Great Western Bank Trading Data; LPL Trading Data; Midwest Trust Trading Data; NATC Trading Data; RBC Trading Data; SEI Private Trust (#2039); SEI Private Trust (#2663); SEI Trust Trading Data; Stifel Trading Data; TDA Trading Data; UBS Trading Data; UMB Trading Data; *Refinitiv; Alvarez&Marsal*

Note:
[1]  Uses Fund Data for transparent accounts and data provided by the respec ive dealers or custodians for non-transparent accounts when available.  Data from  he respective dealers or custodians provides disaggregated transaction records for these non-transparent accounts.
[2]  Inflation gains are equal to the difference between the dollar-amount inflation at sale and dollar-amount inf ation at purchase, multiplied by  he number of shares sold.  Uses as month-end inflation the percentage difference in reported NAV and NAV estimated by Alvarez&Marsal ("Alvarez").  Percentage inflation before February 2017 is assumed to be zero.  The month-end percentage inflation est mate is assumed to prevail over  he whole month.  Daily per share dollar inflation is equal to month-end percentage inflation multiplied by daily NAV per share.  Derived using Alvarez inflation es imates provided on February 11, 2022.
[3]  Within the same account, gains are offset by losses.
[4]  Within the same account, gains are not offset by losses.

Privileged and Confidential:  Attorney Work Product

# EXHIBIT F

# DAF Bloomberg Fees



**Invoice Date:**      05/20/2021
**Invoice Number:**    20210430-5125-A

Infinity Q
TAP  Expenses
U.S. Bancorp Fund Services, LLC
2020 E. Financial Way
Suite 100
Glendora, CA 91741

**Billing Period:**    04/01/2021 to 04/30/2021

CURRENT INVOICE SUMMARY

| | |
|---|---:|
| Miscellaneous Charges | 0.00 |
| Miscellaneous Fees | 300,000.00 |

| | |
|---|---:|
| **TOTAL CURRENT AND PAST DUE** | **$ 300,000.00** |

\* See attached worksheet for calculation details

---

PLEASE ENCLOSE COPY OF INVOICE IN RETURN ENVELOPE

**WIRE / ACH FUNDS TO:**

U.S. Bank NA, 777 E. Wisconsin Avenue, Milwaukee, WI, 53202, US Bancorp Fund Services, LLC, ABA #: 075000022, Account #: 112924312
For Further Credit: US Bancorp Fund Services, LLC, 20210430-5125-A, Attn: Financial Reporting

**MAIL REMITTANCES TO:**

Financial Reporting
U.S. Bancorp Fund Services, LLC
777 East Wisconsin Avenue
Milwaukee, WI 53202

## Investor Servicing
**No Fees**

## Miscellaneous Fees:

| Fee Description | Detail | Amount |
|---|---|---|
| Misc Service | BVAL one time fee of $264k and $36k for ongoing fee BVAL Derivatives service | $ 300,000.00 |
| | **Total Other Fees:** | **$ 300,000.00** |

## Total Amount Due:  $ 300,000.00



**Invoice Date:**      01/03/2022
**Invoice Number:**    20211130-5125-A

Infinity Q
TAP  Expenses
U.S. Bancorp Fund Services, LLC
2020 E. Financial Way
Suite 100
Glendora, CA 91741

**Billing Period:**      11/01/2021 to 11/30/2021

CURRENT INVOICE SUMMARY

| | |
|---|---|
| Miscellaneous Charges | 0.00 |
| Miscellaneous Fees | 150,000.00 |

| | |
|---|---|
| **TOTAL CURRENT AND PAST DUE** | **$ 150,000.00** |

\* See attached worksheet for calculation details

---

PLEASE ENCLOSE COPY OF INVOICE IN RETURN ENVELOPE

**WIRE / ACH FUNDS TO:**
U.S. Bank NA, 777 E. Wisconsin Avenue, Milwaukee, WI, 53202, US Bancorp Fund Services, LLC, ABA #: 075000022, Account #: 112924312
For Further Credit: US Bancorp Fund Services, LLC, 20211130-5125-A, Attn: Financial Reporting
**MAIL REMITTANCES TO:**
Financial Reporting
U.S. Bancorp Fund Services, LLC
777 East Wisconsin Avenue
Milwaukee, WI 53202

## Investor Servicing
**No Fees**

## Miscellaneous Fees:

| Fee Description | Detail | Amount |
|---|---|---|
| Misc Service | BVAL One Time Fee for Ongoing Fee BVAL Derivatives Service | $ 150,000.00 |
| | **Total Other Fees:** | **$ 150,000.00** |

## Total Amount Due: $ 150,000.00

# EXHIBIT G

# DAF Legal Fees



SI LAND RK SQU RE, STAMFORD, CT 06901-2704
T: 203.325.5000 | F: 203.325.5001
www.FDH.com

Special Litigation Committee for the Boa                    April 19, 2023
Trust for Advised Portfolios c/o US Bank Global Fund Service   Matter #:  62772.001
2020 E. Financial Way
Ste 100
Glendora, CA  91741

### SUMMARY OF INVOICE # 171280

For Services Rendered through March   1, 2023
In connection with FDH Representation

Fees for Legal Services                          ▬▬▬▬
Costs and Disbursements                          ▬▬▬

**TOTAL DUE WITH THIS INVOICE**                  ▬▬▬▬

### Wire Transfer and ACH Instructions

age 1

Special Litigation Committee for the Boa
  rust for Advised Portfolios c/o US Bank Global Fund Service
2 2  E. Financial Way
Ste
Glendora, CA  9   4

Invoice # 171280
April 19, 2023
Page 2

For Services Rendered Through March 3  , 2023

Matter #: 62772.001

## FEE DETAILS

| Date | TKPR | Description | Hrs | Fees |
|------|------|-------------|-----|------|





Special Litigation Committee for the Boa  
  rust for Advised Portfolios c/o US Bank Global Fund Service  
2 2  E. Financial Way  
Ste  
Glendora, CA  9   4

Invoice # 171280  
April 19, 2023  
Page 3

For Services Rendered Through March 3  , 2023

Matter #: 62772.001



| | | | | |
|---|---|---|---|---|
| 03/09/23 | DSN | Draft letter to SDNY AUSAs re: Velissaris restitution | 2.50 | 2,062.50 |
| 03/10/23 | DSN | Draft letter to AUSAs re: Velissaris restitution | 1.50 | 1,237.50 |



Special Litigation Committee for the  oa
Trust for Advised Portfolios c/o US  ank Global Fund Service
2 2  E. Financial Way
Ste
Glendora, CA  9   4

Invoice # 171280
April 19, 2023
Page 4

For Services Rendered Through March 3 , 2023

Matter #: 62772.001



| 03/14/23 | DSN | Conduct factual and legal research and draft letter to SDNY re: Velissaris restitution request | 4.50 | 3,712.50 |



Special Litigation Committee for the   oa                                    Invoice # 171280
Trust for Advised Portfolios c/o US   ank Global Fund Service                 April 19, 2023
2 2  E. Financial Way                                                        Page 5
Ste
Glendora, CA  9   4

For Services Rendered Through March 3  , 2023                    Matter #: 62772.001





Special Litigation Committee for the   oa
Trust for Advised Portfolios c/o US   ank Global Fund Service
2 2  E. Financial Way
Ste
Glendora, CA  9   4

Invoice # 171280
April 19, 2023
Page 6

For Services Rendered Through March 3  , 2023                    Matter #: 62772.001

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 03/24/23 | DSN | Draft letter to SDNY AUSAs re: Velissaris restitution for Fund and review underlying materials in support of same | 4.00 | 3,300.00 |
| 03/25/23 | DSN | Correspondence with Susan DiCicco, Andrew Calamari, | 0.20 | 165.00 |
| 03/27/23 | BMA | Review and revise draft letter to SDNY seeking restitution on behalf of the Fund (0.6). Communications with D. Noble, S. DeCecco, and D. Tehrani re: draft letter (0.2) | 0.90 | 558.00 |
| 03/27/23 | DSN | Correspondence with Andrew Calamari, Benjamin Arrow | 0.10 | 82.50 |
| 03/29/23 | DSN | Call with Dan Tehrani re: application for restitution from Velissaris | 0.40 | 330.00 |
| 03/29/23 | DSN | Correspondence with Andrew Calamari, John Siciliano, Benjamin Arrow, Susan DiCicco, Dan Tehrani re: Draft Letter to SDNY re Velissaris Restitution | 0.40 | 330.00 |
| 03/29/23 | DSN | Draft and revise Letter to SDNY re Velissaris Restitution | 1.50 | 1,237.50 |
| 03/29/23 | DSN | Correspondence with Andrew Calamari, Russell Simon, and Chris Kashmerick re: application for restitution from Velissaris | 0.20 | 165.00 |
| 03/30/23 | DSN | Review spreadsheet and invoices for RIIS, A&M, and Cornerstone for Velissaris restitution application | 0.40 | 330.00 |
| 03/30/23 | DSN | Review Cornerstone analysis of  Net Inflation Loss and Excess Management Fees for Velissaris restitution application | 0.50 | 412.50 |
| 03/30/23 | DSN | Draft and revise Letter to SDNY re Velissaris Restitution | 2.00 | 1,650.00 |
| 03/30/23 | DSN | Correspondence with Andrew Calamari, Susan DiCicco re: Letter to SDNY re Velissaris restitution | 0.30 | 247.50 |
| 03/30/23 | DSN | Correspondence with Chris Kashmerick, Andrew Calamari, Russell Simon  regarding application for restitution from Velissaris | 0.20 | 165.00 |
| 03/30/23 | DSN | Correspondence with Margaret Graham and counsel for James | 0.20 | 165.00 |



Special Litigation Committee for the Boa
Trust for Advised Portfolios c/o US Bank Global Fund Service
2020 E. Financial Way
Ste 100
Glendora, CA  91741

Invoice # 171280
April 19, 2023
Page 7

For Services Rendered Through March 31, 2023

Matter #: 62772.001

Velissaris re: Fund's restitution application

| 03/31/23 | DSN | Correspondence with Margaret Graham re: Velissaris Restitution Application/Victim Impact Statement | 0.10 | 82.50 |
| 03/31/23 | DSN | Review Government's Sentencing Memorandum in US v. Velissaris | 0.40 | 330.00 |
| 03/31/23 | DSN | Correspondence with SLC re: Fund's application for restitution from Velissaris and Government's sentencing memo | 0.10 | 82.50 |

**TOTAL FEES**

## COSTS AND DISBURSEMENTS

**Total Costs and Disbursements**



 ATTORNEYS AT LAW

Special Litigation Committee for the Boa
Trust for Advised Portfolios c/o US Bank Global Fund Service
2020 E. Financial Way
Ste 100
Glendora, CA  91741

February 17, 2023
Matter #:  62772.001

### SUMMARY OF INVOICE # 170416

For Services Rendered January 10 - January 31, 2023
In connection with FDH Representation

Fees for Legal Services
Costs and Disbursements



**TOTAL DUE WITH THIS INVOICE**

### Wire Transfer and ACH Instructions



Special Litigation Committee for the Boa
Trust for Advised Portfolios c/o US Bank Global Fund Service
2020 E. Financial Way
Ste 100
Glendora, CA  91741

Invoice # 170416
February 17, 2023
Page 2

For Services Rendered Through January 31, 2023

Matter #: 62772.001

## FEE DETAILS



Special Litigation Committee for the Boa
Trust for Advised Portfolios c/o US Bank Global Fund Service
2020 E. Financial Way
Ste 100
Glendora, CA  91741

Invoice # 170416
February 17, 2023
Page 3

For Services Rendered Through January 31, 2023

Matter #: 62772.001



Special Litigation Committee for the Boa
Trust for Advised Portfolios c/o US Bank Global Fund Service
2020 E. Financial Way
Ste 100
Glendora, CA  91741

Invoice # 170416
February 17, 2023
Page 4

For Services Rendered Through January 31, 2023

Matter #: 62772.001



| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 01/25/23 | BMA | Call with Susan DiCicco and Dan Tehrani re: application for restitution in Velissaris criminal action (0.5). | 2.10 | 1,302.00 |
| 01/25/23 | DSN | Zoom with counsel for TAP and SLC re: Velissaris restitution | 0.50 | 412.50 |
| 01/27/23 | DSN | Review  Transcript of Velissaris Guilty Plea | 0.10 | 82.50 |
| 01/27/23 | DSN | Correspondence with Graham, Margaret (USANYS), Tracer, Daniel (USANYS) | 0.50 | 412.50 |
| 01/27/23 | DSN | Correspondence with Tehrani, Daniel B., Andrew Calamari, John Siciliano, Benjamin Arrow | 0.30 | 247.50 |

Special Litigation Committee for the Boa
Trust for Advised Portfolios c/o US Bank Global Fund Service
2020 E. Financial Way
Ste 100
Glendora, CA  91741

Invoice # 170416
February 17, 2023
Page 5

For Services Rendered Through January 31, 2023

Matter #: 62772.001



**TOTAL FEES**

### COSTS AND DISBURSEMENTS



**Total Costs and Disbursements**



SIX LANDMARK SQUARE, STAMFORD, CT 06901-2704
T: 203.325.5000 | F: 203.325.5001
www.FDH.com

Special Litigation Committee for the Boa                                    May 22, 2023
Trust for Advised Portfolios c/o US Bank Global Fund Service        Matter #:  62772.001
2020 E. Financial Way
Ste 100
Glendora, CA  91741

### SUMMARY OF INVOICE # 171780

For Services Rendered through April 30, 2023
In connection with FDH Representation

Fees for Legal Services                      
Costs and Disbursements

**TOTAL DUE WITH THIS INVOICE**

### Wire Transfer and ACH Instructions



Special Litigation Committee for the Boa
Trust for Advised Portfolios c/o US Bank Global Fund Service
2020 E. Financial Way
Ste 100
Glendora, CA  91741

Invoice # 171780
May 22, 2023
Page 2

For Services Rendered Through April 30, 2023

Matter #: 62772.001

## FEE DETAILS

| Date | TKPR | Description | Hrs | Fees |
|------|------|-------------|-----|------|
| 04/03/23 | DSN | Compile and review materials for Velissaris restitution request | 0.30 | 247.50 |
| 04/03/23 | DSN | Correspondence with Andrew Calamari, Chris Kashmerick, Russell Simon re: Restitution request for Velissaris | 0.30 | 247.50 |
| 04/03/23 | DSN | Correspondence with Susan DiCicco, Andrew Calamari, and Cornerstone Research re: Restitution request for Velisssaris | 0.10 | 82.50 |



| Date | TKPR | Description | Hrs | Fees |
|------|------|-------------|-----|------|
| 04/06/23 | DSN | Review invoices and draft supplemental letter to AUSA M. Graham re: Fund restitution from Velissaris (0.5); Call with Cornerstone Research re: calculations underlying Fund restitution request for Velissaris (0.5); Prepare for Velissaris sentencing (0.5) | 1.50 | 1,237.50 |
| 04/06/23 | DSN | Correspondence with AUSA Graham and Velissaris' counsel  re: SLC supplemental request for restitution | 0.20 | 165.00 |
| 04/07/23 | DSN | Attend  Velissaris hearing on motion to withdraw plea and sentencing | 2.30 | 1,897.50 |



Special Litigation Committee for the Boa
Trust for Advised Portfolios c/o US Bank Global Fund Service
2020 E. Financial Way
Ste 100
Glendora, CA  91741

For Services Rendered Through April 30, 2023



Special Litigation Committee for the Boa
Trust for Advised Portfolios c/o US Bank Global Fund Service
2020 E. Financial Way
Ste 100
Glendora, CA 91741

Invoice # 171780
May 22, 2023
Page 4

For Services Rendered Through April 30, 2023

Matter #: 62772.001



**TOTAL FEES**

**COSTS AND DISBURSEMENTS**



Special Litigation Committee for the Boa
Trust for Advised Portfolios c/o US Bank Global Fund Service
2020 E. Financial Way
Ste 100
Glendora, CA  91741

For Services Rendered Through April 30, 2023

Matter #: 62772.001



**Total Costs and Disbursements**



# EXHIBIT H

# (to be(to be filed under seal) filed

# under seal)