

555 12th Street, N.W., Suite 1200
Washington, D.C. 20004-1275 U.S.A.
(202) 289-1313
Fax (202) 289-1330

www.btlaw.com

June 20, 2023

<u>Via ECF</u>
Honorable Denise Cote
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
Courtroom 18B
New York, NY 10007

     RE:   *United States v. James Velissaris,* 22 cr. 105 (DLC)

Dear Judge Cote:

     Defendant, James Velissaris, submits this letter, through counsel, in objection to the government's request for restitution. The Diversified Alpha Fund ("DAF") and the Volatility Alpha Fund ("VAF") (collectively, the "Funds") seek restitution that is astonishing in its size, complexity, and range of expenses. However, the request suffers from a basic and blatant defect. Because Mr. Velissaris was convicted of Title 15 securities fraud only—not any offense under Title 18—as a matter of law the Court lacks authority to order him to pay restitution under the Victim and Witness Protection Act ("VWPA") and the Mandatory Victims Restitution Act ("MVRA").

     However, even if the court finds that the VWPA or the MVRA is applicable to Mr. Velissaris' Title 15 offense, restitution is still improper for additional reasons. ***First***, as the government itself initially admitted in the Pre-Sentence Investigation Report ("PSR"), restitution would be impracticable given the complexities of this case, which include thousands of investors. ***Second***, given the large number of victims and the complexities of the case, ordering restitution would be impracticable. ***Third,*** the requested reimbursement for payments made to third-party service providers for expenses that are not related to *any* investigation, let alone a criminal one, are not recoverable under the VWPA nor the MVRA. ***Fourth***, the request for third-party attorneys' fees in excess of half of a million dollars for trial preparation is unreasonable, and primarily supported only by heavily redacted invoices. ***Fifth***, the government has failed to meet its burden of proffering reliable evidence that would permit the Court to make a reasonable estimate of victim losses. ***Finally***, the investors in the DAF and the VAF are the same as one of the civil cases where a settlement of $55 million has been reached in principle, and thus the Funds should not be permitted to double recover to "repay" those investors. As previewed above and detailed below, the Court should deny the government's request for restitution.

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 2

## Procedural History

On November 20, 2022, Mr. Velissaris pled guilty to Count One of the Indictment, which charged him with securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2 (*See* Indictment, ECF No. 1.) The plea agreement erroneously provided that Mr. Velissaris would make restitution under the VWPA and the MVRA, despite the fact that neither statute covers Mr. Velissaris' Title 15 offense. (Plea Agreement, ¶ 2.) The PSR stated that the government would not seek restitution because it would be impractical given the complexities of the case. (PSR ¶¶ 47, 118, ECF No. 83). For several weeks afterward, the government took no action, notwithstanding its burden of proof on restitution. *See* 18 U.S.C. § 3664(e). However, at sentencing, the government changed course and alerted the Court that it would in fact be seeking restitution. (Sent. Tr., 43). When the Court asked the government "is there any legal reason why I cannot impose the sentence I have described to be imposed[,]" which included a general request for restitution, the government responded "No, your Honor." (*Id.*, 57.).

On March 30, 2023, the DAF submitted its restitution request to the government, claiming it is owed over $58 million which includes various third-party expenses, attorneys' fees, inflation losses, and excess management fees paid to Mr. Velissaris. (DAF March 30, 2023 Ltr.) A week later, the DAF submitted a follow-up request claiming that it is entitled to restitution of an additional $450,000 that the DAF's administrator paid to acquire a license from Bloomberg to use the BVAL pricing tool to assist the DAF's third-party service provider perform its historical valuation analysis, bringing the DAF's total restitution request to approximately $59.2 million. (DAF April 6, 2023 Ltr.)

On May 30, 2023, the VAF submitted its restitution request to the government, claiming it is owed over $67 million, which includes various third-party expenses, attorneys' fees, alleged inflation loss to thousands of former shareholders, and purported excess management fees to Mr. Velissaris. (VAF May 30, 2023 Ltr.)

In total, the Funds seek restitution of $126,281,371.02, which the government has endorsed in its entirety. (Gov't Supp. Sent. Mem. Restitution, ECF No. 129 ("Gov't Mem.")).

## Discussion

**I.      The Court Lacks Authority to Impose Restitution on Mr. Velissaris under the VWPA or MVRA.**

"Federal courts have no inherent power to order restitution. Such authority must be conferred by Congress through statute." *United States v. Gottesman*, 122 F.3d 150, 151 (2d Cir. 1997) (quotation marks omitted). The Funds and the government both purport to rely on the VWPA and the MVRA. (Gov't Mem., 4.) But courts within this Circuit that have considered this issue have repeatedly concluded that neither the MVRA or VWPA authorize a court to impose restitution on a defendant like Mr. Velissaris who was convicted of Title 15 securities fraud only.

BARNES & THORNBURG LLP

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 3

By its clear and unambiguous terms, the MVRA applies only in "sentencing proceedings for convictions of . . . an offense against property *under this title* [*i.e.*, Title 18]" or of certain other specified crimes not charged here. 18 U.S.C. § 3663A(c)(1) (emphasis added). Its discretionary counterpart, the VWPA, similarly authorizes restitution only "when sentencing a defendant convicted of an offense *under this title*" (again referring to Title 18) or certain drug and transportation offenses. 18 U.S.C. § 3663(a)(1)(A) (emphasis added). The "under this title" limitation in these statutes is not an idle modifier; it cabins the Court's authority and precludes it from ordering restitution in any non-Title 18 offense beyond the handful of other specified crimes. *See, e.g., Hughey v. United States*, 495 U.S. 411, 412 (1990) (VWPA applies only "when sentencing defendants convicted of certain offenses"); *United States v. Adams*, 955 F.3d 238, 250 (2d Cir. 2020) (district court lacked authority under MVRA and VWPA to order restitution for Title 26 offenses); *United States v. Fore*, 169 F.3d 104, 110 (2d Cir. 1999) (reversing restitution order because VWPA "deprives the district court of the power to order restitution for . . . social security fraud convictions"); *United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998) (VWPA authorizes restitution only "when the defendant is convicted of a specified collection of statutes").

For the same reasons, courts in this Circuit have held that neither the VWPA nor the MVRA permit restitution for Title 15 offenses, such as securities fraud. *See United States v. Petit*, 541 F. Supp. 3d 304, 307 (S.D.N.Y. 2021) ("Because [defendant] was convicted of securities fraud – a Title 15 offense – the MVRA does not mandate and the VWPA does not authorize the Court to impose restitution on [defendant]."); *United States v. Cuti*, No. 08-cr-972, 2011 WL 3585988, at *6 n.9 (S.D.N.Y. July 29, 2011) ("The [MVRA] and the [VWPA] do not apply to Defendant [ ] because those statutes only provide for restitution after conviction of a Title 18 offense. Defendant [ ] was only convicted of a substantive offense of Securities Fraud, a Title 15 offense."); *United States v. Cummings*, 189 F. Supp. 2d 67, 73 (S.D.N.Y. 2002) (VWPA does not authorize restitution "for a substantive violation of securities laws").[1]

A sentencing court thus "exceed[s] its authority" if it purports to order restitution for any offense not explicitly covered by the MVRA or VWPA. *Adams*, 955 F.3d at 250. Moreover, the Indictment's citation to 18 U.S.C. § 2 in Count One does not enlarge the Court's statutory authority. Unlike conspiracy, aiding and abetting is not itself an offense; it is only a theory of liability. *See United States v. Singh*, 390 F.3d 168, 186 (2d Cir. 2004) ("18 U.S.C. § 2 does not create a separate crime. It simply makes an aider and abettor a principal, and one who aids and abets a violation of statute has violated that statute.") (quotation marks omitted); *United States v. Mucciante*, 21 F.3d 1228, 1234 (2d Cir. 1994) ("The federal aiding and abetting statute . . . does not penalize conduct apart from the substantive crime with which it is coupled."). Thus, a

---

[1] Courts in other Circuits have held the same. *See, e.g., United States v. Acord*, 790 F. App'x 18, 19 (5th Cir. 2020) (vacating restitution order because "[n]either [the MVRA nor the VWPA] authorizes a restitution award for violations of Title 15"); *United States v. Frith*, 461 F.3d 914, 919 (7th Cir. 2006) (district court could not order restitution under MVRA or VWPA because defendant was "convicted of two Tile 15 crimes" only); *United States v. Wenger*, No. 2:99-cr-00260, 2004 WL 724458, at *6 (D. Utah Jan. 30, 2004) (no statutory "authorization for restitution for Title 15 offenses").

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 4

conviction for aiding and abetting Title 15 securities fraud is still a Title 15 crime and does not trigger the MVRA or the VWPA. *See Petit*, 541 F. Supp. 3d at 308 ("The Court agrees with the Eighth and Ninth Circuits and holds that the indictment's citation to 18 U.S.C. § 2 does not serve to authorize restitution under the MVRA or the VWPA."); *Cummings*, 189 F. Supp. 2d at 73 n.7 (MVRA and VWPA did not permit restitution simply because the Title 15 securities fraud count "include[d] a reference to 18 U.S.C. § 2").[2]

The government obscures this fundamental statutory limitation on the Court's restitution authority. The government asserts that the Court "need not decide whether Title 15 securities fraud falls under the applicable restitution statutes, because the defendant expressly agreed in his plea agreement" to make restitution under the MVRA and the VWPA. (Gov't Mem., 4.) Specifically, the government contends that the VWPA permits restitution in this case, which provides that a district court "may also order restitution in any criminal case *to the extent* agreed to by the parties in a plea agreement." (Gov't Mem., 3.) (citing 18 U.S.C. § 3663(a)(3)) (emphasis added). However, two consequences flow from this language. First, the court can order restitution only in an amount not to exceed that *agreed upon* by the parties. *Gottesman*, 122 F.3d at 152. Second, a court can order restitution only if the parties agreed that a court may do so. *Id.* The government cites to *Shaw* in support of its argument, but that case is inapposite.

In *Shaw*, the defendant pled guilty to three offenses, none of which were covered by the VWPA or MVRA. *United States v. Shaw*, 446 F. App'x 357, 358 (2d Cir. 2011). Paragraph 1 of the plea agreement contained the "Defendant's Promises" which contained three stipulations, including one in which the defendant consented to the entry of a restitution order "directing him to pay restitution in full to any person who would qualify as a victim, under 18 U.S.C. § 3663 or § 3663A, of his criminal conduct, *whether or not the offenses are encompassed in the offenses of conviction*." (emphasis added). The agreement in *Shaw* demonstrated (1) the defendant's understanding that he was stipulating to restitution not covered by the MVRA or VWPA, and (2) that the parties agreed to have the district court determine the amount of restitution with full understanding that without the agreement, the court would lack authority to do so.

Here, in contrast, it is clear that the parties did not agree on restitution as contemplated by the MVRA or the VWPA. The instant case is more like the Second Circuit's recent decision in *Rendon-Reyes*, wherein the court vacated the district court's restitution order. In *Rendon-Reyes*, the defendant pled guilty to two offenses that were not covered by the MVRA. *United States v. Rendon-Reyes*, No. 20-446, 2023 WL 3332553, at *2 (2d Cir. May 10, 2023). The plea agreement

---

[2] *See also Acord*, 790 F. App'x at 19 (vacating restitution order against defendant convicted of Title 15 securities fraud and 18 U.S.C. § 2); *United States v. Yielding*, 657 F.3d 688, 718-19 (8th Cir. 2011) (MVRA inapplicable because a "conviction for aiding and abetting a Title 42 offense is a conviction under Title 42"); *United States v. Elias*, 269 F.3d 1003, 1021 (9th Cir. 2001) (VWPA inapplicable "because Section 2 does not establish 'an offense' of which a defendant may be convicted; it merely determines which offenses may be punished as principals") (quotation marks omitted); *United States v. Jewell*, No. 4:07-cr-00103, 2009 WL 1010877, at *12 (E.D. Ark. Apr. 15, 2009) (rejecting government's argument that "a charge under aiding and abetting" transforms a non-title 18 offense into a Title 18 offense for purposes of the MVRA).

**BARNES & THORNBURG** LLP

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 5

erroneously indicated that for each offense, restitution was "mandatory in the full amount of each victim's losses as determined by the Court," under the MVRA, 18 U.S.C. §§ 3663A, 3664. *Id.* at *1 n.1. The district court thus imposed restitution in the amount of $157,500. *Id.* On appeal, the parties agreed that restitution was not mandatory for the defendant's offenses, and that the district court plainly erred in failing to recognize its discretion. *Id.* Specifically, the government conceded that the language of the plea agreement—merely providing that restitution be made pursuant to the MVRA, without more—demonstrated that the parties did not agree on restitution as contemplated by 18 U.S.C. §§ § 3663A(a)(3) or 3663A(c)(2). The Second Circuit thus vacated the district court's restitution order. *Id.*

Mr. Velissaris' plea agreement likewise does not establish that the parties agreed on restitution as contemplated by the MVRA or the VWPA. The plea agreement does not identify any victims to whom restitution would be paid, or an agreed upon amount, and it does not identify "a person[] other than the victim of the offense," 18 U.S.C. § 3663A(a)(3), or "specifically state[]" some other offense for which restitution should be imposed. *Id.* § 3663A(c)(2); *Cf. United States v. Rodriguez*, 260 F. App'x 414, 415 (2d Cir. 2008) ("as part of the plea agreement, Rodriguez consented to having the Government seek restitution on conduct related to all the counts in the indictment" under § 3663A(a)(3)). Nor does the plea agreement support the argument that Mr. Velissaris agreed to restitution under the MVRA or VWPA, despite his offense not being encompassed by either statute, like the defendant in *Shaw*. Finally, the sentencing transcript also illustrates that the government never alerted the Court to the fact that Mr. Velissaris' Title 15 offense is not encompassed by either statute. (Sent. Tr., 57.).

The need for precise language in § 3663(a)(3) cases "is driven by the policy that plea agreements, like contracts, are instruments used to protect the rights and expectations of the parties." *Gottesman*, 122 F.3d at 152. Thus, plea agreements are analyzed according to contract law, tempered with an awareness of "due process concerns for fairness and . . . adequacy." *Id.* Further, as with any contract in which the drafting party has an overwhelming superior bargaining position, plea agreements are construed strictly against the government. *Id.*

Here, the district court must construe the plea agreement's language regarding restitution against the government. Thus, to the extent the government seeks restitution pursuant to the MVRA and VWPA, the court cannot grant its request because Mr. Velissaris was only convicted of the substantive offense of securities fraud, a Title 15 offense that is not encompassed by these statutes.

## II.    The number of victims and complex issues of fact in this case make restitution impracticable.

Even if the Court determines that the MVRA or the VWPA applies here, the Court should not order restitution because it would be impracticable given the complexities of the case. The government has previously represented as much:

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 6

> According to the Government, the offense involved dozens of investors in the
> Hedge fund and likely thousands in the Mutual fund, and it would be impractical to
> seek restitution in light of the parallel liquidation of funds being overseen by the
> SEC and other entities. Further, the Government informed that seeking restitution
> could create inconsistencies with the liquidation proceedings. Pursuant to 18 U.S.C.
> § 3663A(c)(3)(B), restitution shall not apply if the Court finds that determining
> complex issues of fact related to the cause or amount of the victims' losses would
> complicate or prolong the sentencing process to a degree that the need to provide
> restitution to any victim is outweighed by the burden of the sentencing process.

(PSR, ¶ 47; *see also* ¶ 118.). The PSR further provided that restitution is "not applicable" to this case, and that because "restitution is impracticable, a fine of $50,000 is recommended to provide some measure of a financial component to the sentence in addition to the expected forfeiture order." (*Id.*, p. 34.).

The Second Circuit has recognized that "[a] victim's right to restitution is not absolute: even the [MVRA], the very name of which conveys that restitution is mandatory, recognizes that restitution need not be imposed if the court finds that correctly calculating or apportioning restitution would be impractical or would unduly prolong the sentencing process." *Fed. Ins. Co. v. United States*, 882 F.3d 348, 366 (2d Cir. 2018) (citing authorities, including 18 U.S.C. § 3663A(c)(3)). Thus, although the MVRA generally requires that a defendant convicted of fraud be ordered to pay restitution to anyone who qualifies as a victim of the fraud within the meaning of the statute, there are two notable exceptions to that general rule. Specifically, Section 3553A(c)(3) provides that a fraud victim is not entitled to what would otherwise be mandatory restitution if the district court finds from facts on the record that "the number of identifiable victims is so large so to make restitution impracticable," or that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(A), (B). "Thus, the MVRA provides that, under these two circumstances, victims are not entitled to mandatory restitution." *In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 564 (2d Cir. 2005).

"Congress plainly intended that sentencing courts not become embroiled in intricate issues of proof, as it provided that the MVRA is to be inapplicable if the court finds that the determination of complex factual issues related to the cause or amount of the victims' losses would unduly burden the sentencing process." *See United States v. Reifler*, 446 F.3d 65, 136 (2d Cir. 2006) (vacating district court's securities fraud restitution orders and directing the district court on remand to consider whether to forego restitution under 18 U.S.C. § 3663A(c)(3)(B) to avoid burdening the sentencing process with litigation over complex issues of fact related to the cause or amount of potential victims' losses). The purpose of these exceptions is to prevent "sentencing courts [from] becom[ing] embroiled in intricate issues of proof," and "reflects Congress's intention that the process of determining an appropriate of restitution be 'streamlined'" and sentencings "not become fora for the determination of facts and issues better suited to civil proceedings." *Reifler*, 446 F.3d at 136-37.

**BARNES & THORNBURG** LLP

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 7

Thus, when the number of victims and/or the complex issues of fact would make restitution impracticable, courts have denied restitution petitions. *See, e.g., United States v. Sharma*, No. 18-cr-340, 2021 WL 861353, at *3 (S.D.N.Y. Mar. 8, 2021) (denying claimants' petition for restitution and holding that MVRA exceptions applied). In *Sharma*, the district court found restitution impracticable because the record showed that defendants' company had "thousands of investors" and "[d]etermining the amount of each individual's loss is a fact-intensive query, involving a determination of when each victim purchased and sold CTR tokens, the degree to which the value of the tokens was inflated by defendants' fraudulent misrepresentations and whether that fraudulent inflation proximately caused the victim's purchase and/or sale of CTR tokens and concomitant loss." *Id.*

Here, similar to *Sharma*, the record shows that the number of potential victims in the Fund's restitution submission is massive. For example, the PSR represents that the VAF "involved dozens of investors" and the DAF involved "thousands." (PSR, ¶ 47.). Further, in the operative complaint filed by the SEC against Mr. Velissaris involving the same conduct charged in the Indictment, the SEC represented to the court that Mr. Velissaris had "thousands of investors" in his company's mutual fund. (*See* Complaint, ¶ 51 in *S.E.C. v. James Velissaris*, 1:22-cv-01346 (S.D.N.Y.)) Determining the amount of each individual's loss would be a fact-intensive query, involving a determination of when each victim purchased and sold the OTC derivative securities, the degree to which the value of the securities was inflated by Mr. Velissaris' alleged fraudulent misrepresentations and whether that fraudulent inflation proximately caused the victim's purchase and/or sale of the securities and concomitant loss. 18 U.S.C. § 3663A(a)(2). The Fund's calculations of the net inflation loss, the amount of the alleged loss, and the estimated excess management fees put together by the Fund demonstrates the complexity. Determining the amount of loss is even further complicated by the fact that the government has failed to establish a true, objective value for the OTC derivative securities, as this Court acknowledged during a pretrial hearing. (*See* ECF No. 70 at 73, lines 17-25) (observing that the government's proffered expert was not "recreating any 'true value' [of the OTC derivative securities] in a historic sense."). Taken together, the large number of victims and the difficulty ascertaining their specific losses make restitution impractical in this case, particularly as any restitution order would need to be entered within 90 days of sentencing. *See* 18 U.S.C. § 3664(d)(5) ("If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing . . . the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.").

District courts should decline to fashion a post-conviction order of restitution where such order would severely complicate and prolong the sentencing process. Courts in this Circuit have repeatedly elected to forego restitution in light of the large number of potential victims who may be eligible for restitution or significant complexities involved in identifying those eligible for restitution or calculating the amounts of their respective losses. *See In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d at 563 (affirming district court's denial of restitution as impracticable where the court found that "the victims in this case were numerous and … the complexity of resolving a multitude of factual and causal issues would extend the sentencing process inordinately"); *United States v. McQuillan*, No. 07-cr-17, 2007 WL 2827850, at *2 (S.D.N.Y. Sept. 26, 2007) (declining

**BARNES & THORNBURG** LLP

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 8

to award restitution in securities fraud conspiracy case where purported victim's application for restitution "present[ed] complex issues of fact" and where the government and defendant both agreed that the amount of loss could not be reasonably determined); *United States v. Ferguson*, 585 F. Supp. 2d 447, 456-59 (D. Conn. 2008).

Accordingly, the court should deny the Funds' restitution requests because the number of identifiable victims is so large as to make restitution impracticable, and determining complex issues of fact related to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to the victims is outweighed by the burden on the sentencing process.

## III. The Funds' payments to third-party service providers were not directly associated with any criminal matter, and thus are unrecoverable.

The MVRA and VWPA only authorize restitution to victims who are "directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663(a)(2) and 3663A(a)(2). Further, the MVRA and VWPA limit recoverable expenses to "lost income and necessary child care, transportation, and *other expenses* incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4); 18 U.S.C. § 3663A(b)(4). In *Lagos v. United States*, 138 S. Ct. 1684 (2018), the Supreme Court narrowly construed the MVRA, concluding that the words "investigation" and "proceedings" refer specifically to "*criminal* prosecution" and "*criminal* investigation." *Id.* at 1688 (emphasis added). In *United States v. Afriyie*, the Second Circuit reiterated the holding in *Lagos*, and held that restitution is appropriate only for expenses associated with criminal matters. 27 F.4th 161, 163 (2d Cir. 2022). Civil matters—including SEC investigations, even if closely related to a criminal case—do not qualify. *Id.*

The millions of dollars in fees sought by the DAF and VAF that they paid to various service providers would have to qualify as "other expenses" under the MVRA or VWPA to be recoverable. However, as *Lagos*, *Afriye*, and the statutory language make clear, only "other expenses" *incurred during participation* in the *criminal* investigation or *criminal* prosecution of the offense or attendance at *criminal* proceedings related to the offense are recoverable.

Here, the government has conceded "the fees at issue here were not associated with any investigation. Rather, these fees were associated with the wind-down process for DAF – a wind-down that was necessitated by the defendant's fraud." (Gov't Mem., 6.) The DAF's submission further demonstrates that all of its requested fees paid to third-party service providers were not associated with criminal matters but with the SEC's civil liquidation Order (*See* DAF March 30, 2023 Ltr.):

- "On December 20, 2021, the Board of TAP approved the creation of the SLC **to investigate and pursue on behalf of the Fund** any potential claims against other parties arising from the massive valuation fraud perpetrated by defendant[.]"

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 9

- "***Consistent with the SEC Order, the TAP Board retained Russell Investments Implementation Services, LLC*** . . . to assist in the liquidation of the assets held by the Fund that were not already in cash or cash equivalents at the time of the SEC Order."

- "***Pursuant to the SEC Order***, ***the TAP Board retained Alvarez & Marshal Valuation Services, LLC*** to perform a re-evaluation of the Fund's February 18, 2021 NAV [net asset values] and the Fund's historical valuations."

- "***[T]he SEC order required the TAP Board to develop a plan of distribution*** to distribute the Fund's assets to shareholders under the supervision of the SEC."

- "Mr. Velissaris' fraud was the direct and proximate cause of the extensive pecuniary damages that the Fund has incurred, including . . . the Fund's payment of $4,712,298 in fees to various service providers that the Fund had to retain in order to carry out [certain tasks], ***in accordance with the SEC Order***[.]"

(*Id.*). Similarly, the government asserts that the VAF is entitled to the fees it paid to third-party service provider Markit to reevaluate VAF's historic NAVs "because the U.S. Attorney's Office used Markit's revised NAV in its indictment, and the VAF used Markit's calculations to calculate the restitution amounts set forth in this letter." (*Id.*). However, for the same reasons as the DAF, the VAF is not entitled to restitution merely because its calculations were ultimately used in the Indictment—the expenses must be incurred during participation in or attendance associated with a criminal matter. Because the government concedes that these expenses were not associated with *any* investigation, the Court should deny its request for all fees paid to third-party service providers.

## IV. The third-party legal expenses sought are not limited to "necessary other expenses" incurred during the government's criminal investigation, and thus are unrecoverable.

The Second Circuit has held that "necessary . . . other expenses" under the MVRA and VWPA can include attorneys' fees. *See, e.g., Afriyie*, 72 F.4th at 164. However, the attorneys' fees sought must be reasonable. *See, e.g., United States v. Chan*, No. 16-cr-10268, 2019 WL 3975579, at *8 (D. Mass. Aug. 22, 2019) (finding that certain attorneys' fees incurred while seeking restitution were excessive).

Here, the attorneys' fees sought are unreasonably excessive. For example, the VAF seeks Scott Lindell's legal fees in the amount of $516,115.00 which "were incurred directly as a result of Mr. Lindell's participation in the prosecution of Mr. Velissaris (for example, the government's preparation of Mr. Lindell to testify against Mr. Velissaris)" and legal fees in the amount of $79,182.67 for other employees "who were interviewed by the government and were prepared to testify against Mr. Velissaris." (VAF May 30, 2023 Ltr.) While the MVRA and VWPA permits recovery of attorneys' fees for preparation for interviews by government prosecutors, neither statute permits recovery of attorneys' fees for private counsel's witness preparation relating to trial testimony. *See Chan*, 2019 WL 3975579, at *7 (excluding excessive and unnecessary time for

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 10

"witness preparation" because "[t]rial witness preparation . . . is the responsibility of the government prosecutor, not private counsel. And although [defendant's employer's] counsel may well have assisted the prosecution in presenting the government's case, the mandatory restitution statute does not allow for this shifting of fees to the defendants."). Further, because the government has redacted most, if not all, of the attorneys' fees invoices in its submission, the court cannot possibly determine if the requested fees are reasonable.

Thus, the government's attempt to shift the $595,297.67 in third-party legal fees to Mr. Velissaris is not permitted by the MVRA or VWPA, and thus are not recoverable.

**V.      The calculation of the amount of overpayments is unreliable.**

The Funds seek approximately $100 million in overpayments from Mr. Velissaris. (Gov't Mem., 2-3.). In restitution proceedings, the government bears the burden of proving the amount of loss sustained by the victim and "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence." 18 U.S.C. § 3664(e). The government asserts "in arriving at a restitution figure, the Court need only make a 'reasonable estimate' of the victims' losses due to the fraud." (Gov't Mem., 6.) But this argument ignores the fact that when restitution is impracticable given the complexities of the case, courts in this Circuit have found it improper to estimate victim losses. *See, e.g., Ferguson*, 584 F. Supp. 2d at 458 (ordering no restitution because "[f]ashioning such an order of restitution would require a level of detail and precision that was not necessary to calculate a reasonable estimate of loss" where government admitted that restitution would be impracticable).

The district court is tasked with making a reasonable estimate of the actual loss "based on the evidence before it." *United States v. Milstein*, 481 F.3d 132, 173 (2d Cir. 2007). Here, the evidence before the Court—including evidence submitted by the government and its purported expert—illustrates how complicated calculating the true value of the Funds is, which would result in an unreasonable estimate of victim losses. For example, the VAF seeks approximately $26 million for overpayment of management fees and excess performance allocations. (Gov't Mem., 2-3.) However, the government's expert, Dr. Faten Sabry, Ph.D., asserted in her report that the VAF's losses were approximately $1.4 million in excess management fees and $8.5 million in excess performance allocations. *See* 9/12/2022 Expert Report of Dr. Faten Sabry, Ph.D. (the "Sabry Report"), ECF Docket #36-1, ¶ 131. However, even Dr. Sabry's estimates are not reliable. As Mr. Velissaris' expert, Dr. Atanu Saha, Ph.D., demonstrated in his report, Dr. Sabry did not perform any independent valuation of the Funds' securities *at all* to arrive at these loss figures, making her "conclusions" about losses suffered by the Funds irrelevant to the Court's loss analysis. *See* 10/28/2022 Expert Report of Dr. Atanu Saha, Ph.D. (the "Saha Report"), ECF Docket #55-1, 44-47.

As Dr. Saha established in his report, the version of BVAL Dr. Sabry used to analyze the values of the Funds' swap positions was not the version of Bloomberg's BVAL pricing tool the Funds *themselves* were using to evaluate prices. (Saha Report, ECF Docket #55-1, at 46.) Even if Dr. Sabry had been looking at the right data, as outlined in Mr. Velissaris' prior submissions to the

**■ ■ ■ ■ ■ BARNES & THORNBURG** LLP

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 11

Court, and in Dr. Saha's report, the BVAL is an inherently flawed tool that does not accurately value the Funds' securities. (*See* Saha Report, ECF Docket #55-1, ¶ 5.) The SEC has acknowledged as much. On January 23, 2023, the SEC levied a $5 million fine against Bloomberg for serious issues with the way in which data was utilized in BVAL between 2016 and 2022, which includes the period covered by the Indictment. (*See* Indictment, ECF No. 1, ¶ 1.) Specifically, the SEC alleged that BVAL was not working accurately and could generate misleading valuations:

> Bloomberg failed to disclose to its customers that the use of EIT could, in certain circumstances, result in a valuation based on an uncorroborated single data input. Due to this omission, Bloomberg's description of its valuation methodology was materially misleading because it conveyed that the prices of fixed income securities derived through the observed comparable algorithm were based on value relative to comparable securities only, when in fact certain of the prices of fixed income securities were based on a single broker quote with respect to the target security.

Bloomberg Finance L.P., Sec. Act Rel. No. 11150, ¶¶ 11 (Jan. 23, 2023). Thus, the Funds used a flawed pricing tool to calculate the value of the securities, and therefore to calculate their losses. And although the government's expert and the Funds' third-party service providers both used BVAL to calculate losses, their respective methodology in evaluating that data were considerably different—which may explain the large discrepancy in their estimates of victim losses.

The complexity of the calculations conducted by the government's expert and the Funds' third-party service providers (and their respective conclusions on total victim losses) further demonstrate why restitution is impracticable in this case.

## VI.   To the extent the Funds are including any investors that are part of the settlements in related civil matters, the Funds are not entitled to double recovery.

The Second Circuit has held that a restitution order may be offset by funds that are received by a victim. *United States v. Drayer*, 364 F. App'x 716, 722 (2d Cir. 2010). This can be restated in a simple principle: "restitution may not result in double recovery." *Cummings*, 189 F. Supp. 2d at 69.

Here, it is unclear from the government's submission what "former shareholders" the Funds assert they need to repay. But the investors in the DAF and the VAF are the same as at least one of the civil cases filed against Mr. Velissaris where a settlement of $55 million has been reached in principle.[3] The government cites *Smathers* for the proposition that Mr. Velissaris can be ordered to pay restitution now, and then if at some point in the future the victims receive

---

[3] *In re Infinity Q Diversified Alpha Fund Securities Litigation*, 651295/2021 (N.Y. Sup. Ct.) (pending settlement); *In re Infinity Q Diversified Alpha Fund and Infinity Q Volatility Alpha Fund, L.P. Securities Litigation*, 21-cv-1047 (E.D.N.Y.) (pending settlement); *Oak Financial Group, Inc. v. Infinity Q Diversified Alpha Fund*, 21-cv-034249 (E.D.N.Y.) (pending settlement); *Dominus Multimanager Fund, Ltd. v. Infinity Q Capital Management LLC, et al.*, No. 652906/2022 (N.Y. Sup. Ct.) (pending settlement).

Honorable Denise Cote
RE: *United States v. James Velissaris, 22 cr. 105 (DLC)*
June 20, 2023
Page 12

compensatory damages for the same loss in civil proceedings, then Mr. Velissaris can make a post-judgment motion for reduction of restitution recovered. (Gov't Mem., 7.). However, *Smathers* is inapposite for three reasons. ***First***, in *Smathers*, the defendant was convicted of a Title 18 offense, not a Title 15 offense, and thus the MVRA applied. *United States v. Smathers*, 879 F.3d 453, 455 (2d Cir. 2018). Here, neither the MVRA nor VWPA is applicable to Mr. Velissaris' Title 15 offense. ***Second***, in *Smathers*, the defendant failed to show that the amounts recovered by the victim in the civil suit covered the same loss caused by the defendant. *Id.* In this case, the proceeds from the civil matter cover the same losses and would compensate the victims. To the extent the government contends that there is no overlap between the victims in this case and the victims in the civil suit, it is the government's burden to prove that is the case. ***Finally***, in *Smathers*, the defendant tried to reduce his restitution by an amount of civil damages against other defendants. *Id.* at 456. Here, the civil suits are against Mr. Velissaris himself, and there is no "ex ante" reduction because the cases are pending settlement. Further, because ordering restitution in this case may complicate or delay the impending settlements in the civil cases, the court should not order restitution.

## Conclusion

For the foregoing reasons, Mr. Velissaris respectfully requests that the Court deny the government's restitution request.

Respectfully submitted,

_____/s/_____
Michelle N. Bradford (admitted *pro hac vice*)
Michael A. Battle
William R. Martin (admitted *pro hac vice*)
David S. Slovick (*Entry of Appearance* forthcoming)
Erin C. Steele (*pro hac vice* pending)
BARNES & THORNBURG LLP
555 12th Street NW, Suite 1200
Washington, DC 20004

cc:     Counsel of Record (via ECF)

BARNES & THORNBURG LLP